**No. 16-11309-GG**

# In the United States Court of Appeals
# For the Eleventh Circuit

ACADIA INSURANCE CO.,
>> Appellant,

v.

UNITED STATES,
>> Appellee.

On Appeal from the U.S. District Court, Northern District of Alabama
Cause No. 5:13-cv-00895-CLS
The Honorable C. Lynwood Smith, Jr., Presiding

## APPELLANT'S *UNOPPOSED* MOTION TO REINSTATE

Farbod Farnia
ffarnia@mccathernlaw.com
Paul Grinke
pgrinke@mccathernlaw.com

**MCCATHERN, PLLC**
3710 Rawlins, Suite 1600
Dallas, TX 75219
Phone: (214) 741-2662
Fax: (214) 741-4717

*Counsel for Appellants*

---

## APPELLANT'S *UNOPPOSED* MOTION TO REINSTATE

---

COMES NOW, Appellant Acadia Insurance Co. ( "Appellant"); and files this *Unopposed Motion to Reinstate*. In support, Appellant shows the Court as follows:

## I. BACKGROUND

On June 30, 2016, this Court dismissed this appeal for want of prosecution for failure "to file an appendix within the time fixed by the rules." *See* Docket Entry (docketed June 30, 2016). This oversight was exclusively due to the inadvertence of the undersigned counsel. During the week before and the week of Appellant's brief was due, Appellant was attending to an emergency matter in another appellate case the week before and week of trial. *See In re Montrose Business Interests, LLC*, No. 01-16-00483-CV (Tex. App. 2016). Upon receiving the dismissal notice today, the undersigned counsel called the Clerk of the Court and was informed that in order to remedy the mistake, Appellant would need to file a motion to reinstate, attaching a copy of the Appendix thereto. This Motion, along with the Appendix (*see* Exhibit A) are being filed in accordance with that instruction.

## II. MOTION

Under the 11th Circuit Rule 30-1(c), an appellant must file its appendix within seven days of filing its brief. 11TH CIR. R. 30-1(c). Failure to do so may result in an administrative dismissal by the Clerk for want of prosecution. *See* 11TH CIR. R. 42-1(b). Upon such dismissal, the Clerk is authorized, on the defaulting party's timely unopposed motion, to reinstate the appeal. *See* 11TH CIR. R. 27-1(c)(10).

Here, Appellant inadvertently failed to timely file the appendix. Immediately upon receiving the notice of dismissal, the undersigned counsel contacted the clerk to remedy the default and was instructed to file this Motion and to attach the Appendix hereto. Counsel then contacted the counsel for the United States, who stated that the United States is not opposed to the relief sought herein. Accordingly, Appellant respectfully requests that the Clerk of Court reinstate this appeal pursuant to 11th Circuit Rule 27-1(c)(10).

## III.    CONCLUSION & PRAYER

WHEREFORE, Appellants respectfully request that this Motion be granted and the appeal be reinstated on the Court's docket.

3

Respectfully Submitted,

/s/ Farbod Farnia
_____
Farbod Farnia
ffarnia@mccathernlaw.com
Paul Grinke
pgrinke@mccathernlaw.com

**MCCATHERN, PLLC**
Regency Plaza
3710 Rawlins, Suite 1600
Dallas, Texas 75219
Phone: (214) 741-2662
Fax: (214) 741-4717

*Counsel for Appellant*

## CERTIFICATE OF CONFERENCE

I hereby certify that on June 30, 2016, I conferred via email with opposing counsel and was informed that the United States is not opposed to the relief sought herein.

/s/ Farbod Farnia
_____
Farbod Farnia

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2016, I served the foregoing Motion on all parties and counsel in this via electronic service using the Court's ECF filing and electronic service system.

/s/ Farbod Farnia
_____
Farbod Farnia

## CERTIFICATE OF INTERESTED PARTIES
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and 11th Circuit Rules 26.1 and 27.1(a)(9), Appellant Acadia Insurance Company ("Acadia") states that it is a wholly owned subsidiary of W.R. Berkley Corporation (NYSE: WRB). A detailed description of the relationship between Acadia and W.R. Berkley Corp. was filed with the Court on April 7, 2016 in Appellant's Certificate of Interested Persons and Corporate Disclosure Statement.

/s/ Farbod Farnia
Farbod Farnia

# Exhibit A

**No. 16-11309-GG**

# In the United States Court of Appeals
# For the Eleventh Circuit

---

ACADIA INSURANCE CO.,

*Appellant,*

v.

UNITED STATES,

*Appellee.*

---

On Appeal from the U.S. District Court, Northern District of Alabama
Cause No. 5:13-cv-00895-CLS
The Honorable C. Lynwood Smith, Jr., Presiding

---

## APPENDIX

---

Farbod Farnia
ffarnia@mccathernlaw.com
Paul A. Grinke
pgrinke@mccathernlaw.com

**MCCATHERN, PLLC**
3710 Rawlings, Suite 1600
Dallas, TX 75219
Phone: (214) 741-2662
Fax: (214) 741-4717

*Counsel for Appellant*

# TABLE OF CONTENTS

| Tab No. | Document | Page No. |
|---|---|---|
| A | District Court Docket Sheet ............................................ 4 | |
| B | Plaintiff's Original Complaint ...................................... 16 | |
| C | Defendant United States' Answer to Plaintiff's Original Complaint ................................... 58 | |
| D | Plaintiff's First Amended Complaint ............................ 70 | |
| E | Memorandum Opinion and Final Judgment .................. 79 | |
| F | Excerpts from Trial Transcript (Testimony of Special Agent Siegling) [Transcr. P. 139–51] ............... 96 | |

FILED: June 30, 2016

Respectfully Submitted,

/s/ Farbod Farnia
Farbod Farnia
ffarnia@mccathernlaw.com
Paul A. Grinke
pgrinke@mccathernlaw.com

**McCathern, PLLC**
3710 Rawlings, Suite 1600
Dallas, TX 75219
Phone: (214) 741-2662
Fax: (214) 741-4717

*Counsel for Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2016, I served the foregoing Appendix on all parties and counsel in this via electronic service using the Court's ECF filing and electronic service system and sent same to the Court via certified mail, return receipt requested.

/s/ Farbod Farnia
Farbod Farnia



Query
Reports
Utilities
Logout

CLOSED

**U.S. District Court**
**Northern District of Alabama (Northeastern)**
**CIVIL DOCKET FOR CASE #: 5:13-cv-00895-CLS**

| | |
|---|---|
| Acadia Insurance Co. v. United States of America et al | Date Filed: 05/10/2013 |
| Assigned to: Judge C Lynwood Smith, Jr | Date Terminated: 01/25/2016 |
| Case in other court: 11th Circuit, 16-11309 | Jury Demand: None |
| Cause: 28:1391 Personal Injury | Nature of Suit: 890 Other Statutory Actions |
| | Jurisdiction: U.S. Government Defendant |

**Plaintiff**

**Acadia Insurance Co.**
*as subrogee of Yedla Management Co., Inc., & Hospitality Enterprises of Huntsville, Inc.*
*doing business as*
Country Inn & Suites

represented by **Carl L Evans , Jr**
MCCATHERN MOOTY GRINKE LLP
3710 Rawlins Street
Suite 1600
Dallas, TX 75219
214-741-2662
Fax: 214-741-4717
Email: cevans@mccathernlaw.com
*ATTORNEY TO BE NOTICED*

**Paul A Grinke**
MCCATHERN PLLC
3710 Rawlins Street Suite 1600
Dallas, TX 75219
214-741-2662
Fax: 214-741-4717
Email: pgrinke@mccathernlaw.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**United States of America**                represented by  **Jack B Hood**
US ATTORNEY'S OFFICE
1801 4th Avenue North
Birmingham, AL 35203-2101
205-244-2001
Email: jack.hood@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joyce White Vance**
USA
1801 4th Avenue North
Birmingham, AL 35203
205-244-2001
Email: usaaln.ecfusa@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Michael Siegling**
*TERMINATED: 10/30/2013*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/10/2013 | 1 | COMPLAINT with jury demand thereon against Michael Siegling and United States of America filed by Acadia Insurance Co.(AHI ) (Entered: 05/13/2013) |
| 05/13/2013 | 2 | NOTICE regarding consent of a civil action to a magistrate judge (AHI ) (Entered: 05/13/2013) |
| 06/04/2013 | | Filing Fee: Filing fee $ 400, receipt_number 1126-1937928 (B4601044328). related document 1 COMPLAINT against Michael Siegling and United States of America filed by Acadia Insurance Co.(AHI ). (Evans, Carl) Modified on 6/6/2013 (AHI). (Entered: 06/04/2013) |
| 06/17/2013 | 3 | Request for service by certified mail filed by Acadia Insurance Co.. (AHI) (Entered: 06/18/2013) |
| 06/18/2013 | 4 | Summons Issued by the clerk and delivered via certified mail for service as to Michael Siegling; Summons Issued by the clerk and delivered to |

App'x Page 5

| | | |
|---|---|---|
| | | plaintiff for service as United States of America and U.S. Attorney and U.S. Attorney General (AHI) (Entered: 06/18/2013) |
| 07/01/2013 | 5 | Summons Returned Unexecuted by Acadia Insurance Co. as to Michael Siegling. (SPT ) (Entered: 07/02/2013) |
| 08/29/2013 | 6 | ANSWER to 1 Complaint by United States of America.(Hood, Jack) (Entered: 08/29/2013) |
| 08/30/2013 | 7 | ALND UNIFORM INITIAL ORDER GOVERNING ALL FURTHER PROCEEDINGS - with appendices attached. Signed by Judge C Lynwood Smith, Jr on 8/30/2013. (AHI) (Entered: 08/30/2013) |
| 09/20/2013 | 8 | REPORT of Rule 26(f) Planning Meeting. (Hood, Jack) (Entered: 09/20/2013) |
| 10/08/2013 | 9 | ORDER TO SHOW CAUSE that the plaintiff is ORDERED to show casue in writing by 10/22/2013, why its claims against defendant Siegling should not be dismissed for failure to prosecute this action as more fully set out in order. Signed by Judge C Lynwood Smith, Jr on 10/8/2013. (AHI ) (Entered: 10/08/2013) |
| 10/11/2013 | 10 | NOTICE by Acadia Insurance Co. *of Service of Initial Disclosures* (Evans, Carl) (Entered: 10/11/2013) |
| 10/30/2013 | 11 | ORDER DISMISSING FEWER THAN ALL DEFENDANTS that it is ORDERD that all of plaintiff's claims against defendant Seigling are DISMISSED without prejudice for failure to prosecute this action, as more fully set out in order. Signed by Judge C Lynwood Smith, Jr on 10/30/2013. (AHI) (Entered: 10/30/2013) |
| 11/01/2013 | 12 | NOTICE by United States of America *of Filing Defendant's Rule 26 Initial Disclosures* (Hood, Jack) (Entered: 11/01/2013) |
| 12/23/2013 | 13 | SCHEDULING ORDER: that certain time limits and deadlines apply as set out in this order; Discovery due by 5/23/2014; Dispositive Motions due by 6/20/2014; Witness and Exhibit Lists due by 7/18/2014; Trial ready by 8/2014. Signed by Judge C Lynwood Smith, Jr on 12/23/2013. (AHI ) (Entered: 12/23/2013) |
| 12/23/2013 | 14 | MOTION for Leave to File *First Amended Complaint* by Acadia Insurance Co.. (Evans, Carl) (Entered: 12/23/2013) |
| 12/23/2013 | 15 | AMENDED COMPLAINT with jury demand thereon against United States of America, filed by Acadia Insurance Co..(Evans, Carl) (Entered: 12/23/2013) |
| 12/27/2013 | 16 | RESPONSE in Opposition re 14 MOTION for Leave to File *First Amended Complaint* filed by United States of America. (Hood, Jack) (Entered: 12/27/2013) |

App'x Page 6

| | | |
|---|---|---|
| 01/16/2014 | 17 | ORDER that the 14 Motion for Leave to File an Amended Complaint is GRANTED as more fully set out in order. Signed by Judge C Lynwood Smith, Jr on 1/16/2014. (AHI) (Entered: 01/16/2014) |
| 02/04/2014 | 18 | MOTION for Leave to Appear Admission Pro Hac Vice by Acadia Insurance Co.. (Grinke, Paul) (Entered: 02/04/2014) |
| 02/21/2014 | 19 | NOTICE by United States of America *of Filing Amended Rule 26 Initial Disclosures* (Hood, Jack) (Entered: 02/21/2014) |
| 03/04/2014 | 20 | NOTICE by Acadia Insurance Co. *of Serving Expert Designation Purusant to Fed. R. Civ. P. 26(a)(2)* (Evans, Carl) (Entered: 03/04/2014) |
| 03/13/2014 | | PHV Fee paid: $ 50, receipt number 1126-2124714 (B460151110). (Grinke, Paul) Modified on 3/14/2014 (SPT, ). (Entered: 03/13/2014) |
| 03/13/2014 | | ORDER granting 18 Motion for Leave to Appear. Signed by Judge C Lynwood Smith, Jr on March 13, 2014. (ALJ) (Entered: 03/13/2014) |
| 03/21/2014 | 21 | Submission of Discovery regarding motion by United States of America. Related document: 14 MOTION for Leave to File *First Amended Complaint* filed by Acadia Insurance Co.. (Attachments: # 1 Exhibit A part 1, # 2 Exhibit A part 2, # 3 Exhibit A part 3, # 4 Exhibit A part 4, # 5 Exhibit 1, # 6 Exhibit 2, # 7 Exhibit 3, # 8 Exhibit 4, # 9 Exhibit 5, # 10 Exhibit 6, # 11 Exhibit 7, # 12 Exhibit 8 part 1, # 13 Exhibit 8 part 2, # 14 Exhibit 8 part 3, # 15 Exhibit 9, # 16 Exhibit 10, # 17 Exhibit 11, # 18 Exhibit 12)(Hood, Jack) (Entered: 03/21/2014) |
| 03/21/2014 | 22 | MOTION to Dismiss by United States of America. (Hood, Jack) (Entered: 03/21/2014) |
| 03/21/2014 | 23 | Brief re 22 MOTION to Dismiss . (Hood, Jack) (Entered: 03/21/2014) |
| 03/21/2014 | 24 | Brief re 23 Brief *EVIDENTIARY MATERIALS IN SUPPORT OF MOTION TO DISMISS*. (Hood, Jack) (Entered: 03/21/2014) |
| 03/24/2014 | | ORDER setting motion deadline 22 Motion to Dismiss. Any response is due on or before April 7, 2014. Any reply is due on or before April 14, 2014. Signed by Judge C Lynwood Smith, Jr on March 24, 2014. (ALJ) (Entered: 03/24/2014) |
| 04/04/2014 | 25 | NOTICE by United States of America *of Filing Amended Initial Disclosures and Rule 26 Expert Disclosure* (Hood, Jack) (Entered: 04/04/2014) |
| 04/07/2014 | 26 | RESPONSE in Opposition re 22 MOTION to Dismiss filed by Acadia Insurance Co.. (Attachments: # 1 Appendix Evidentiary Materials in Support of Response Brief to Defendant's Motion to Dismiss)(Evans, Carl) (Entered: 04/07/2014) |

| | | |
|---|---|---|
| 04/11/2014 | 27 | MOTION for Leave to File Excess Pages by United States of America. (Hood, Jack) (Entered: 04/11/2014) |
| 04/11/2014 | | ORDER granting 27 Motion for Leave to File Excess Pages. Signed by Judge C Lynwood Smith, Jr on April 11, 2014. (ADH) (Entered: 04/11/2014) |
| 04/14/2014 | 28 | REPLY to Response to Motion re 22 MOTION to Dismiss *Pursuant to Fed. R. Civ. P. 37, or, in the Alternative, for Summary Judgment Pursuant to Fed. R. Civ. P. 56* filed by United States of America. (Hood, Jack) (Entered: 04/14/2014) |
| 05/22/2014 | 29 | MOTION To Exclude the Testimony of Plaintiff's Expert Daniel R. Wilkerson by United States of America. (Attachments: # 1 Exhibit 1A, # 2 Exhibit 1B, # 3 Exhibit 1C, # 4 Exhibit 1D, # 5 Exhibit 1E, # 6 Exhibit 2, # 7 Exhibit 3, # 8 Exhibit 4)(Hood, Jack) (Entered: 05/22/2014) |
| 05/22/2014 | 30 | MOTION To Exclude the Testimony of Plaintiff Expert Roderick S. Williams by United States of America. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Hood, Jack) (Entered: 05/22/2014) |
| 05/22/2014 | | ORDER setting motion deadline 29 Motion. Any response to the motion to exclude is due on or before June 5, 2014. Signed by Judge C Lynwood Smith, Jr on May 22, 2014. (ALJ) (Entered: 05/22/2014) |
| 05/22/2014 | | ORDER setting motion deadline 30 Motion. Any response to the motion to exclude is due on or before June 5, 2014. Signed by Judge C Lynwood Smith, Jr on May 22, 2014. (ALJ) (Entered: 05/22/2014) |
| 06/04/2014 | 31 | NOTICE by Acadia Insurance Co. *of Conflict* (Grinke, Paul) (Entered: 06/04/2014) |
| 06/05/2014 | 32 | RESPONSE in Opposition re 30 MOTION To Exclude the Testimony of Plaintiff Expert Roderick S. Williams filed by Acadia Insurance Co.. (Attachments: # 1 Appendix)(Grinke, Paul) (Entered: 06/05/2014) |
| 06/05/2014 | 33 | RESPONSE in Opposition re 29 MOTION To Exclude the Testimony of Plaintiff's Expert Daniel R. Wilkerson filed by Acadia Insurance Co.. (Attachments: # 1 Appendix)(Grinke, Paul) (Entered: 06/05/2014) |
| 06/09/2014 | 34 | Consent MOTION for Leave to File *Reply Brief* by United States of America. (Hood, Jack) (Entered: 06/09/2014) |
| 06/09/2014 | | ORDER granting 34 Motion for Leave to File. Defendant's reply brief is due on or before June 16, 2014. Signed by Judge C Lynwood Smith, Jr on June 9, 2014. (ALJ) (Entered: 06/09/2014) |
| 06/13/2014 | 35 | REPLY to Response to Motion re 29 MOTION To Exclude the Testimony of Plaintiff's Expert Daniel R. Wilkerson filed by United States of |

| | | |
|---|---|---|
| | | America. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Hood, Jack) (Entered: 06/13/2014) |
| 06/13/2014 | 36 | REPLY to Response to Motion re 30 MOTION To Exclude the Testimony of Plaintiff Expert Roderick S. Williams filed by United States of America. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Hood, Jack) (Entered: 06/13/2014) |
| 06/18/2014 | 37 | MOTION for Leave to File *Sur-Reply to Defendant's Motion to Strike Expert Testimony* by Acadia Insurance Co.. (Grinke, Paul) (Entered: 06/18/2014) |
| 06/18/2014 | 38 | NOTICE by United States of America *of Withdrawal of Opposition to Plaintiff's Motion* (Hood, Jack) (Entered: 06/18/2014) |
| 06/18/2014 | | ORDER granting 37 Motion for Leave to File. Signed by Judge C Lynwood Smith, Jr on June 18, 2014. (ALJ) (Entered: 06/18/2014) |
| 06/20/2014 | 39 | MOTION for Summary Judgment by United States of America. (Hood, Jack) (Entered: 06/20/2014) |
| 06/20/2014 | 40 | Brief re 39 MOTION for Summary Judgment . (Hood, Jack) (Entered: 06/20/2014) |
| 06/20/2014 | 41 | Evidentiary Material re: 40 Brief, 39 MOTION for Summary Judgment . (Attachments: # 1 Exhibit 1, # 2 Exhibit 2A, # 3 Exhibit 2B, # 4 Exhibit 2C, # 5 Exhibit 2D, # 6 Exhibit 2E)(Hood, Jack) (Entered: 06/20/2014) |
| 06/20/2014 | 42 | MOTION to Strike *the Testimony of Defendant's Expert David J. Icove and Brief in Support* by Acadia Insurance Co.. (Grinke, Paul) (Entered: 06/20/2014) |
| 06/20/2014 | | ORDER setting motion deadline 39 Motion for Summary Judgment. Any response is due on or before July 11, 2014. Any reply is due on or before July 22, 2014. Signed by Judge C Lynwood Smith, Jr on June 20, 2014. (ALJ) (Entered: 06/20/2014) |
| 06/20/2014 | | ORDER setting motion deadline 42 Motion to Strike. Any response is due on or before July 7, 2014. Signed by Judge C Lynwood Smith, Jr on June 20, 2014. (ALJ) (Entered: 06/20/2014) |
| 06/23/2014 | 43 | REPLY to Response to Motion re 37 MOTION for Leave to File *Sur-Reply to Defendant's Motion to Strike Expert Testimony*, 29 MOTION To Exclude the Testimony of Plaintiff's Expert Daniel R. Wilkerson filed by Acadia Insurance Co.. (Grinke, Paul) (Entered: 06/23/2014) |
| 06/23/2014 | 44 | REPLY to Response to Motion re 37 MOTION for Leave to File *Sur-Reply to Defendant's Motion to Strike Expert Testimony*, 30 MOTION To Exclude the Testimony of Plaintiff Expert Roderick S. Williams filed by Acadia Insurance Co.. (Grinke, Paul) (Entered: 06/23/2014) |

| 06/26/2014 | 45 | RESPONSE in Opposition re 42 MOTION to Strike *the Testimony of Defendant's Expert David J. Icove and Brief in Support* filed by United States of America. (Hood, Jack) (Entered: 06/26/2014) |
|---|---|---|
| 06/26/2014 | 46 | Joint MOTION for Leave to File *Reply and Sur-Reply with Respect to Plaintiff's Motion to Exclude the Testimony of Defendant's Expert David J. Icove* by Acadia Insurance Co.. (Grinke, Paul) (Entered: 06/26/2014) |
| 06/27/2014 | | ORDER granting 46 Motion for Leave to File. Signed by Judge C Lynwood Smith, Jr on June 27, 2014. (ALJ) (Entered: 06/27/2014) |
| 06/30/2014 | 47 | REPLY Brief filed by Plaintiff Acadia Insurance Co. re: 45 Response in Opposition to Motion *to Exclude the Testimony of Dr. David Icove* filed by Acadia Insurance Co.. (Grinke, Paul) (Entered: 06/30/2014) |
| 07/09/2014 | 48 | REPLY to Response to Motion re 42 MOTION to Strike *the Testimony of Defendant's Expert David J. Icove and Brief in Support (Sur-Reply)* filed by United States of America. (Hood, Jack) (Entered: 07/09/2014) |
| 07/10/2014 | 49 | MOTION for Limited Admission *, Pro Hac Vice* by United States of America. (Hood, Jack) (Entered: 07/10/2014) |
| 07/10/2014 | 50 | Amended MOTION for Limited Admission *(Pro Hac Vice)* by United States of America. (Hood, Jack) (Entered: 07/10/2014) |
| 07/11/2014 | 51 | RESPONSE to re 40 *Defendant's Motion for Summary Judgment* filed by Acadia Insurance Co.. (Grinke, Paul) (Entered: 07/11/2014) |
| 07/16/2014 | 52 | Opposition to re 49 *Motion for Pro Hac Vice Admission of Guy E. Burnette, Jr.* filed by Acadia Insurance Co.. (Grinke, Paul) (Entered: 07/16/2014) |
| 07/17/2014 | 53 | TEXT ORDER setting motion deadline 50 Motion for Limited Admission. Defendant is ordered to file a reply to its motion for limited admission of Guy E. Burnette, Jr. on or before July 31, 2014. Signed by Judge C Lynwood Smith, Jr on July 17, 2014. (ALJ) (Entered: 07/17/2014) |
| 07/18/2014 | 54 | Witness List *and Exhibit List For Trial* by United States of America. (Hood, Jack) (Entered: 07/18/2014) |
| 07/18/2014 | 55 | Exhibit List by Acadia Insurance Co... (Grinke, Paul) (Entered: 07/18/2014) |
| 07/18/2014 | 56 | Witness List by Acadia Insurance Co.. (Grinke, Paul) (Entered: 07/18/2014) |
| 07/21/2014 | 57 | REPLY to Response to Motion re 39 MOTION for Summary Judgment filed by United States of America. (Hood, Jack) (Entered: 07/21/2014) |

| | | |
|---|---|---|
| 07/22/2014 | 58 | MOTION for Leave to File *Sur-Reply to Defendant's Reply Brief in Support of Motion for Summary Judgment* by Acadia Insurance Co.. (Grinke, Paul) (Entered: 07/22/2014) |
| 07/22/2014 | 59 | TEXT ORDER granting 58 Motion for Leave to File. Signed by Judge C Lynwood Smith, Jr on July 22, 2014. (ALJ) (Entered: 07/22/2014) |
| 07/25/2014 | 60 | REPLY to re 57 *Defendant's Reply Brief in Support of Motion for Summary Judgment* filed by Acadia Insurance Co.. (Grinke, Paul) (Entered: 07/25/2014) |
| 07/30/2014 | 61 | RESPONSE in Support re 50 Amended MOTION for Limited Admission *(Pro Hac Vice)* filed by United States of America. (Attachments: # 1 Exhibit A)(Hood, Jack) (Entered: 07/30/2014) |
| 07/31/2014 | | PHV Fee paid: $ 50, receipt number 1126-2218624 (B4601054863). (Burnette, Guy) Modified on 8/1/2014 (AHI). (Entered: 07/31/2014) |
| 08/01/2014 | 62 | Opposition to re 54 *Defendant's Exhibit and Witness Lists* filed by Acadia Insurance Co.. (Grinke, Paul) (Entered: 08/01/2014) |
| 08/01/2014 | 63 | Opposition to re 56 , 55 *Plaintiff's Witness and Exhibit Lists For Trial* filed by United States of America. (Hood, Jack) (Entered: 08/01/2014) |
| 08/01/2014 | 64 | AMENDED Objections to Defendant's Exhibit and Witness Lists. filed by Acadia Insurance Co. (Grinke, Paul) Modified on 8/4/2014 (AHI). (Entered: 08/01/2014) |
| 10/02/2014 | 65 | ORDER that the Motion for Limited Admission (PHV) for Mr. Burnette is DENIED as more fully set out in order. Signed by Judge C Lynwood Smith, Jr on 10/2/2014. (AHI ) (Entered: 10/02/2014) |
| 02/23/2015 | 66 | TEXT ORDER setting motion deadline 29 Motion to Exclude. Defendant is hereby ORDERED to file a copy of the Rule 26 expert report of Daniel Wilkerson, the subject of its motion to exclude, by Thursday, February 26, 2015. Signed by Judge C Lynwood Smith, Jr on February 23, 2015. (HFF) (Entered: 02/23/2015) |
| 02/24/2015 | 67 | NOTICE by United States of America re 66 Order on Motion for Miscellaneous Relief, *Defendant's Response to Text Order to File Copy of Rule 26 Report of Daniel Wilkerson* (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Hood, Jack) (Entered: 02/24/2015) |
| 02/25/2015 | 68 | NOTICE by Acadia Insurance Co. re 66 Order on Motion for Miscellaneous Relief, (Evans, Carl) (Entered: 02/25/2015) |
| 03/10/2015 | 69 | MEMORANDUM OPINION AND ORDER that the 22 MOTION to Dismiss or Motion for Sanctions is DENIED as more fully set out in order. |

| | | |
|---|---|---|
| | | Signed by Judge C Lynwood Smith, Jr on 3/10/2015. (AHI) (Entered: 03/10/2015) |
| 03/10/2015 | 70 | MEMORANDUM OPINION AND ORDER that the 39 MOTION for Summary Judgment is DENIED as more fully set out in order. Signed by Judge C Lynwood Smith, Jr on 3/10/2015. (AHI) (Entered: 03/10/2015) |
| 03/10/2015 | 71 | ORDER that the plaintiff's jury demand is STRICKEN and the United States' motions to exclude, and plaintiffs motion to strike, are DENIED. The court will determine the admissibility of the challenged expert testimony, and the weight to be accorded each witness' opinions, if any, after hearing the testimony of each witness at trial as more fully set out in order. Signed by Judge C Lynwood Smith, Jr. on 3/10/2015. (AHI) (Entered: 03/10/2015) |
| 07/08/2015 | 72 | MOTION to Set Trial Date by Acadia Insurance Co.. (Grinke, Paul) (Entered: 07/08/2015) |
| 09/23/2015 | 73 | CLERK'S NOTICE that a Pretrial Conference is set for 10/15/2015 02:30 PM in Federal Courthouse, Huntsville, AL before Judge C Lynwood Smith Jr. (Attachments: # 1 Pretrial Instructions)(AHI ) (Entered: 09/23/2015) |
| 10/15/2015 | 74 | PRETRIAL ORDER that a Bench Trial is set for 1/11/2016 09:00 AM in Federal Courthouse, Huntsville, AL before Judge C Lynwood Smith Jr. as more fully set out in order. Signed by Judge C Lynwood Smith, Jr on 10/15/2015. (AHI) (Entered: 10/15/2015) |
| 12/01/2015 | 75 | MOTION in Limine *to Exclude and/or Limit the Testimony of Plaintiff's Fire Origin and Cause Experts* by United States of America. (Hood, Jack) (Entered: 12/01/2015) |
| 12/07/2015 | 76 | Exhibit List *Amended Exhibit List* by Acadia Insurance Co... (Grinke, Paul) (Entered: 12/07/2015) |
| 12/09/2015 | 77 | RESPONSE in Opposition re 75 MOTION in Limine *to Exclude and/or Limit the Testimony of Plaintiff's Fire Origin and Cause Experts* filed by Acadia Insurance Co.. (Grinke, Paul) (Entered: 12/09/2015) |
| 12/09/2015 | 78 | Statement of Facts by Acadia Insurance Co.. filed by Acadia Insurance Co. (Grinke, Paul) (Entered: 12/09/2015) |
| 12/10/2015 | 79 | AMENDED STATEMENT OF AGREED AND DISPUTED FACTS by Acadia Insurance Co.. Amendment to 78 Statement of Facts . filed by Acadia Insurance Co. (Grinke, Paul) Modified on 12/10/2015 (AHI) (Entered: 12/10/2015) |
| 12/11/2015 | 80 | ORDER that the defendant's 75 Motion in Limine is DENIED As more fully set out in order. Signed by Judge C Lynwood Smith, Jr on 12/11/2015. (AHI) (Entered: 12/11/2015) |

| | | |
|---|---|---|
| 12/14/2015 | 81 | Opposition to *Plaintiff's Amended Exhibit (Doc. 76) and Witness (Doc. 56) Lists for Trial* filed by United States of America. (Hood, Jack) (Entered: 12/14/2015) |
| 12/16/2015 | 82 | Brief *Defendant's Brief of Analogous Cases for Trial*. (Hood, Jack) (Entered: 12/16/2015) |
| 12/16/2015 | 83 | Brief *Listing Cases Most Analogous to the Facts of The Present Controversy* filed by Acadia Insurance Co.. (Grinke, Paul) (Entered: 12/16/2015) |
| 12/18/2015 | 84 | NOTICE by United States of America *of Filing Amended Initial Disclosures* (Hood, Jack) (Entered: 12/18/2015) |
| 12/30/2015 | 85 | Brief *Defendant's Reply Brief of Analogous Cases for Trial*. (Hood, Jack) (Entered: 12/30/2015) |
| 12/30/2015 | 86 | RESPONSE to re 82 *Plaintiff's Response In Opposition to Defendants Brief of Analogous Cases for Trial* filed by Acadia Insurance Co.. (Grinke, Paul) (Entered: 12/30/2015) |
| 01/04/2016 | 87 | ORDER that the court reserves ruling on the defendant's objections to plaintiff's amended trial witness and exhibit lists and will consider them as they arise during trial. Signed by Judge C Lynwood Smith, Jr on 1/4/2016. (AHI) (Entered: 01/04/2016) |
| 01/04/2016 | 88 | NOTICE by United States of America *of Filing Amended Initial Disclosures* (Hood, Jack) (Entered: 01/04/2016) |
| 01/11/2016 | | Minute Entry for proceedings held before Judge C Lynwood Smith, Jr: Bench Trial held on 1/11/2015. Opening statements; Testimony of plff -- plff rests; Motion of defendant for Judgment at the close of plff's evidence and the close of all evidence, filed in open court - OVERRULED per oral order, Judge Smith; Testimony of defendant -- defendant rests; - Deft orally renews its motion for judgment -- motion taken under advisement by the court -- Plff's written response to defendant's motion due on or before Friday, January 15, 2016. hearing adj; (Court Reporter Christina Decker.) (LCW, ) Modified on 1/12/2016 (AHI ). (Entered: 01/12/2016) |
| 01/11/2016 | 89 | MOTION for Judgment as a Matter of Law, filed in open court January 11, 2016, by United States of America, (LCW) (Entered: 01/12/2016) |
| 01/15/2016 | 90 | RESPONSE to re 89 *PLAINTIFFS RESPONSE TO DEFENDANTS MOTION FOR JUDGMENT AT THE CLOSE OF PLAINTIFFS EVIDENCE AND AT THE CLOSE OF ALL OF THE EVIDENCE* filed by Acadia Insurance Co.. (Grinke, Paul) (Entered: 01/15/2016) |
| 01/25/2016 | 91 | MEMORANDUM OPINION AND ORDER DISMISSING CASE that the government's Rule 52 motion is GRANTED; Judgment is entered in favor of defendant, the United States of America, on all claims asserted by |

| | | |
|---|---|---|
| | | plaintiff and costs are taxed to plaintiff. Signed by Judge C Lynwood Smith, Jr on 1/25/2016. (AHI) (Entered: 01/25/2016) |
| 01/29/2016 | 92 | BILL OF COSTS by United States of America. filed by United States of America (Hood, Jack) (Entered: 01/29/2016) |
| 01/29/2016 | | NOTICE that the clerk will tax costs pursuant to FRCP 54(d) in response to Bill of Costs filed by the United States of America on 2/16/2016; objections, if any, to the bill of costs must be filed on or before 2/15/2016 (AHI ) (Entered: 01/29/2016) |
| 02/18/2016 | 93 | Costs Taxed in amount of $1,521.05 against Plaintiff (AHI) (Entered: 02/18/2016) |
| 03/23/2016 | 94 | NOTICE OF APPEAL as to 91 Memorandum Opinion and Order Dismissing Case by Acadia Insurance Co.. Filing fee $ 505, receipt number 1126-2590380 (B460109907). Appeal Record due by 4/6/2016. (Evans, Carl) Modified on 3/24/2016 (AHI). Modified on 3/25/2016 (AHI). (Entered: 03/23/2016) |
| 03/24/2016 | 95 | TRANSMITTAL LETTER regarding 94 Notice of Appeal (AHI) (Entered: 03/24/2016) |
| 03/24/2016 | 96 | Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals regarding 94 Notice of Appeal (AHI) (Entered: 03/24/2016) |
| 03/24/2016 | 97 | USCA Case Number 16-11309 for 94 Notice of Appeal filed by Acadia Insurance Co. (AHI) (Entered: 03/24/2016) |
| 04/05/2016 | 98 | TRANSCRIPT REQUEST by Acadia Insurance Co. for proceedings held on 1/11/16 before Judge Lynwood Smith, Jr... filed by Acadia Insurance Co. (Grinke, Paul) (Entered: 04/05/2016) |
| 04/15/2016 | 99 | Eleventh Circuit Transcript Information Form - Part II - Court Reporter Acknowledgment. (AHI ) (Entered: 04/18/2016) |
| 05/11/2016 | 100 | Transcript of BENCH TRIAL held on 1/11/2016, before Judge C. Lynwood Smith, Jr.. Court Reporter/Transcriber Christina Decker. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. NOTICE: The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. (A copy can be obtained at http://www.alnd.uscourts.gov/local/court%20forms/transcripts/Transcript%20Redaction%20Policy.pdf) See Transcript Redaction Policy Redaction Request due 6/1/2016. Redacted Transcript Deadline set for 6/13/2016. |

| | | |
|---|---|---|
| | | Release of Transcript Restriction set for 8/9/2016. (AHI) (Entered: 05/11/2016) |
| 05/11/2016 | 101 | Eleventh Circuit Transcript Information Form - Part III - Notification that Transcript has been filed in District Court(AHI) (Entered: 05/11/2016) |
| 05/26/2016 | | Pursuant to F.R.A.P. 11(c), the Clerk of the District Court for the Northern District of Alabama certifies that the record is complete for purposes of this appeal regarding 94 Notice of Appeal, Appeal No. 16-11309. The entire record on appeal is available electronically. (AHI) (Entered: 05/26/2016) |
| 06/30/2016 | 102 | MANDATE of USCA CLERK'S ENTRY OF DISMISSAL: appeal is DISMISSED for want of prosecution because the appellant Acadia Insurance Co. failed to file an appendix within the time fixed by the rules, issued as mandate 6/29/2016 (AHI) (Entered: 06/30/2016) |

**PACER Service Center**

**Transaction Receipt**

06/30/2016 11:40:20

| **PACER Login:** | Mccathernlaw:2758350:0 | **Client Code:** | 760.64 |
|---|---|---|---|
| **Description:** | Docket Report | **Search Criteria:** | 5:13-cv-00895-CLS |
| **Billable Pages:** | 7 | **Cost:** | 0.70 |

FILED

2013 May-13  AM 10:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**OF THE NORTHERN DISTRICT OF ALABAMA**
**HUNTSVILLE DIVISION**

| | | |
|---|---|---|
| **ACADIA INSURANCE CO., AS** | § | |
| **SUBROGEE OF** | § | |
| **YEDLA MANAGEMENT CO., INC.** | § | |
| **& HOSPITALITY ENTERPRISES** | § | |
| **OF HUNTSVILLE, INC. D/B/A** | § | |
| **COUNTRY INN & SUITES** | § | |
| *Plaintiff,* | § | **Cause No.:** _____ |
| **v.** | § | |
| | § | |
| **UNITED STATES OF AMERICA** | § | |
| **AND MICHAEL SIEGLING** | § | |
| *Defendants.* | § | |

---

### PLAINTIFF'S ORIGINAL COMPLAINT

---

TO THE HONORABLE JUDGE OF THE COURT:

Plaintiff Acadia Insurance Co., as subrogee of Yedla Management Co., Inc., files its

Original Complaint against Defendants, the United States of America and Michael Siegling, and

in support thereof would respectfully show the Court as follows:

### I. PARTIES

1. Plaintiff Acadia Insurance Co., as Subrogee of Yedla Management Co., Inc. and Hospitality

Enterprises of Huntsville, Inc. d/b/a Country Inn & Suites, is an insurance company authorized to

write policies and conduct business in the State of Alabama; Yedla Management Co., Inc. is an

Alabama corporation.

2. The United States of America may be served by delivering a copy of summons and of the

complaint to the United States Attorney for the Northern District of Alabama, Joyce White

Vance, at United States Attorney's Office for the Northern District of Alabama, Huntsville

App'x Page 16

Office, 400 Meridian Street, Suite 304, Huntsville, Alabama, 35801; and by delivering a copy of the summons and of the complaint to the Attorney General of the United States, Eric J. Holder, Jr., at Office of the Attorney General of the United States, Department of Justice, Room B103, 950 Pennsylvania Avenue, NW, Washington, D.C., 20530-0001; and to the Federal Bureau of Investigations (FBI) at the following address: Federal Bureau of Investigation Headquarters, 935 Pennsylvania Avenue, NW, Washington, D.C. 20535.

3.    Defendant Siegling is an individual that resides in the State of California.  Defendant Siegling may be served with process at the following address: 180 Grand Avenue, Oakland, California 94612, or wherever else he may be found.  Defendant Siegling will be served via private process server in accordance with Fed. R. Civ. P. 4(e)(2)(A).

## II. JURISDICTION & VENUE

4.    The court has jurisdiction over this lawsuit under 28 U.S.C. § 1346(b) because the suit involves a claim against the United States for property damage caused the negligent acts and/or omissions of a government employee, Michael Siegling, while acting within the scope of his or her employment with the Federal Bureau of Investigation (FBI).  The FBI is an agency of the United States of America.  During the time of the incident described in Section IV below, Mr. Siegling was in the course and scope of his employment with the FBI conducting a six-week training program for disarming explosive devices.

5. Venue is proper in this Court pursuant to 28 § 1402(b) and 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, in Huntsville, Alabama, which is in the Huntsville Division of the Northern District of Alabama.

**PLAINTIFF'S ORIGINAL COMPLAINT**                                                                                    **PAGE 2**
L:\00760\0064 (Yedla)\Pleadings\Drafts\Plaintiff's Original Complaint - USA as Defendant.docx

App'x Page 17

### III. Conditions Precedent

6. All conditions precedent to the filing of Plaintiff's Original Complaint have occurred pursuant to 28 U.S.C. § 2401(a) & (b).

7. On August 1, 2012, Plaintiff timely presented this claim in writing to the Federal Bureau of Investigation (FBI) by sending a Standard Form 95 Claim for Damage, Injury, or Death Pursuant to 28 U.S.C. § 2675 and 28 C.F.R. §§ 14.2 – 14.3, and correspondence with additional documentation, in satisfaction of the jurisdictional prerequisites of 28 U.S.C. § 2401(a) & (b) (stating that plaintiff must present claim to appropriate federal agency within two (2) years of the incident made the basis of the complaint). *See* Exhibit A, Standard 95 Claim Form & August 1, 2011 correspondence with exhibits omitted, attached. To date, no response has been received. As such, the demand has been denied pursuant to 28 U.S.C. § 2675(a) (holding that "[t]he failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section."). As such, Plaintiff now properly brings forth his claims in federal court pursuant to 28 U.S.C. § 2401(a) & (b) (within six months of the appropriate federal agency failing to make a final disposition of claim).

### IV. Background Facts

8. While in the course and scope of his employment with the Federal Bureau of Investigation (FBI), Michael Siegling negligently discarded a cigarette in his hotel room causing a fire that resulted in massive property damage to the Country Inn and Suites located at 4880 University Drive, Huntsville, Alabama, 35816 on September 23, 2010.

9. Yedla Management Co., Inc. is an Alabama corporation that invests in hotel chains. Dr. K.R. Yedla, the founder and namesake of Yedla Management, emigrated from India to the United

App'x Page 18

States in the 1950s and pursued his dreams to establish a successful hotel investment corporation.  Yedla Management and Hospitality Enterprises, Inc. d/b/a Country Inn & Suites own and manage several hotels throughout the country, including the subject hotel, the Country Inn and Suites located at 4880 University Drive, Huntsville, Alabama, 35816.  Many of the Country Inn and Suites' guests are federal employees because of the motel's location and proximity to Redstone Arsenal, a United States Army base.

10. In September of 2010, Michael Siegling was an agent with the FBI.  The FBI is an agency of the United States of America. At the time of the subject incident, Mr. Siegling was in the course and scope of his employment with the FBI conducting a six-week training program for disarming explosive devices.

11.  At the time of the incident, Michael Siegling was a resident of Room 2207 at the subject Country Inn & Suites.  Upon information and belief, the FBI paid for and reserved Room 2207. The subject Country Inn & Suites is an upscale motel and actually consists of three (3) separate buildings and 170 individual rooms.

12.  On the date of the incident, September 23, 2010 at approximately 10:30 p.m., a fire started on the balcony of Room 2207 (Defendant Siegling's room).  *See* Exhibit B, Huntsville Fire Marshall Report, attached. The origin of the fire, Room 2207, was located in Building 2.  *See* Exhibit B, attached.  As a result of the fire, Building 2 sustained substantial structural damage as well as smoke and water damage throughout the building. The fire burned upward through two floors and gained access to the attic, severely damaging the truss roof.  *See* Exhibits B, attached. Approximately 40 to 50 feet of the roof structure was severely charred and required replacement. Additionally, Building 3 sustained damage to the vinyl siding as a result of the fire.  Furniture and business personal property located within the motel rooms were extensively damaged due to

the fire. Mattresses present within the rooms were lost due to odor, and upholstered furniture sustained severe damage due to smoke and water.

13. Defendant Siegling admitted to smoking in Room 2207. *See* Exhibit B, attached. Siegling carelessly discarded a cigarette in his room while in the course and scope of his employment with the FBI; this careless and reckless act caused a severe fire that destroyed almost the entirety of Building 2 and business personal property in the adjacent hotel buildings. The Huntsville Fire Marshall's investigation of Room 2207 revealed a pack of Marlboro cigarettes and a lighter present within the room. *See* Exhibit B, attached. Importantly, the Huntsville Fire Marshall, after thoroughly examining the burn patterns and other relevant facts, concluded that the fire was caused due to the careless discarding of a cigarette. *See* Exhibit B, attached. Upon information and belief, Michael Siegling was the only occupant of Room 2207 at the time of the fire.

14. At all times relevant to the present lawsuit, Plaintiff Acadia Insurance Company Insured Yedla Management Company, Inc. and Hospitality Enterprises of Huntsville, Inc. d/b/a Country Inn & Suites against damages to the subject Country Inn & Suites for both real and personal property as well as loss of profits. Therefore, under its insurance contract with Yedla Management Company, Inc. and Hospitality Enterprises of Huntsville, Inc. d/b/a Country Inn & Suites and Alabama law, Plaintiff Acadia Insurance Company is entitled to recover the One Million One Hundred Nineteen Thousand Eight Hundred Seventy-Two Dollars & Ninety-Three Cents ($1,119,536.93) in damages it has paid as a result of the loss caused by the negligence of Defendants.

**PLAINTIFF'S ORIGINAL COMPLAINT**                                                                                    **PAGE 5**
L:\00760\0064 (Yedla)\Pleadings\Drafts\Plaintiff's Original Complaint - USA as Defendant.docx

App'x Page 20

## V. CAUSES OF ACTION

### *Liability Pursuant to Federal Tort Claims Act – FBI & Michael Siegling*

15. Plaintiff incorporates by reference the factual allegations contained in the preceding paragraphs.

16. All conditions precedent to the jurisdictional prerequisites necessary to assert the liability of Defendants under the facts of this matter have occurred or has been performed by Plaintiff.

<u>Count One: Negligence</u>

17. On the date of the incident and at all times relevant to this matter, Michael Siegling was an agent of the FBI and was in the course and scope of his employment as an agent of the FBI. *See* 28 U.S.C. § 2671; *see also Singleton v. Burchfield*, 362 F. Supp.2d 1291 (M.D. Ala. 2005) (holding that an Air Force employee who received a temporary duty assignment to attend a five-week "leadership school" in Alabama who was authorized use of a Department of Defense vehicle to travel from the training school to various places in town, and where the employee took the vehicle to a restaurant for dinner and the employee was involved in an accident with a civilian, that the employee **was acting within the scope of his employment**, and reasoned that the employee was engaged in actions during his training period that conferred a benefit on his employer, and that his conduct was not "impelled by motives that are wholly personal."). In the alternative, and without waiving the foregoing, Defendant Siegling is individually liable to Plaintiff.

18. The United States of America is liable to Plaintiff Acadia Insurance Co., as subrogee of Yedla Management Co., Inc., on the legal doctrine of *respondeat superior* for the breach of the duty of care by the employees, independent contractors, or agents of Defendant FBI because the acts of such persons were performed while in the employment of Defendant, to further

App'x Page 21

Defendant's business, and to accomplish the objective for which the employee, independent contractor, or agent was hired.

19.  As described herein, Defendant FBI, itself and through the actions of its employee, Michael Siegling, was negligent on the occasion in question including but not limited to:

    a.  Failing to properly discard a lit cigarette;
    b.  Failing to insure that cigarette was properly extinguished, creating a dangerous condition;
    c.  Failing to train, instruct and/or otherwise require its employees to safely discard or extinguish a cigarette properly; and
    d.  Otherwise failing to use due care under the circumstances.

20.  This negligence, based on the actions of the FBI and Michael Siegling, was the proximate cause of Plaintiff's injuries.

## VI. DAMAGES

21.  In total, Plaintiff has incurred One Million One Hundred Nineteen Thousand Eight Hundred Seventy-Two Dollars & Ninety-Three Cents ($1,119,536.93) in order to repair the extensive fire, water, and smoke damage to the subject property, along with business interruption loss due to Defendant FBI and Defendant Siegling's negligence.   *See* Exhibit A, Standard Form 95 Claim for Damage, Injury, or Death.  Repairs to the subject motel took approximately one (1) year.

## VII. JURY DEMAND

22.     Plaintiff hereby demands a jury trial on all ultimate fact issues in accordance with Federal law and tenders the appropriate fee with this petition.

## VIII. RESERVATIONS

23.     Plaintiff reserves the right to bring additional causes of action against Defendants and to amend this Petition as necessary.

**PLAINTIFF'S ORIGINAL COMPLAINT**                                                                                              **PAGE 7**
L:\00760\0064 (Yedla)\Pleadings\Drafts\Plaintiff's Original Complaint - USA as Defendant.docx

App'x Page 22

## IX. CONCLUSION & PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff Acadia Insurance Co., as subrogee of Yedla Management Co., Inc. and Hospitality Enterprises of Huntsville, Inc. d/b/a Country Inn & Suites, respectfully requests that the Defendants be cited to appear and answer herein and that upon the final trial of this cause, Plaintiff recover all relief requested herein and for such other and further relief, both at law and in equity, to which the Plaintiff may be justly and legally entitled.

Respectfully submitted,

MCCATHERN, P.L.L.C

By: ___/s/ Carl L. Evans_____
    Carl L. Evans
    Alabama State Bar No. 6823-A35C
    Texas State Bar No. 24056989
    cevans@mccathernlaw.com

    Regency Plaza
    3710 Rawlins Street, Suite 1600
    Dallas, TX 75219
    (214) 741-2662 Telephone
    (214) 741-4717 Facsimile

    **ATTORNEYS FOR ACADIA INSURANCE CO., AS SUBROGEE OF YEDLA MANAGEMENT CO., INC.**

PLAINTIFF'S ORIGINAL COMPLAINT                                          PAGE 8
L:\00760\0064 (Yedla)\Pleadings\Drafts\Plaintiff's Original Complaint - USA as Defendant.docx

App'x Page 23

# Exhibit A



# MCCATHERN
## MCCATHERN | MOOTY | GRINKE, L.L.P.

PAUL A. GRINKE
Partner
pgrinke@mccathernlaw.com

**STANDARD FORM 95 CLAIM FOR DAMAGE, INJURY OR DEATH PURSUANT TO 28 U.S.C.A. § 2675 AND 28 C.F.R. §§ 14.2 – 14.3.**

August 1, 2012

**VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED:**
Federal Bureau of Investigation Headquarters
935 Pennsylvania Avenue, NW
Washington, D.C. 20535

Re:   *Acadia Insurance Company, as subrogee of Yedla Mgmt. Co., Inc. v. Michael Siegling and the Federal Bureau of Investigation*; our File No. 00760.0064.

Dear Sir or Madam:

The law firm of MCCATHERN MOOTY GRINKE, LLP represents Acadia Insurance Company, as subrogee of Yedla Management Company, in the above-referenced matter. Please address all further correspondence to the following:

> MCCATHERN MOOTY GRINKE, LLP
> ATTN: Paul A. Grinke
> 3710 Rawlins Street, Suite 1600
> Dallas, Texas 75219

I am writing this letter in conjunction with Standard Form 95 as prescribed by the Department of Justice to assert claims for property damage on behalf of Acadia Insurance Company, as subrogee, against an individual agent of the federal government. Please refer to the facts below and presentment of sums certain as you analyze Acadia Insurance's claims.

## I. BACKGROUND FACTS

Yedla Management Co., Inc. is an Alabama corporation that invests in hotel chains. Dr. K.R. Yedla, the founder and namesake of Yedla Management, emigrated from India to the United States in the 1950s and pursued his dreams to establish a successful hotel investment corporation. Yedla Management owns several hotels throughout the country, including the subject hotel, the Country Inn and Suites located at 4880 University Drive, Huntsville, Alabama, 35816. Many of the Country Inn and Suites' guests are federal employees because of the motel's location and proximity to Redstone Arsenal, a United States Army base.

The subject Country Inn and Suites is an upscale motel and actually consists of three (3) separate buildings and 170 individual rooms. The incident occurred on September 23, 2010 at approximately 10:30 p.m. The fire started on the balcony of Room 2207. Michael Siegling is an agent with the Federal Bureau of Investigation and on the date of the incident was the guest in Room 2207. Mr. Siegling was a guest of the motel in the course and scope of his employment with the federal government. Mr. Siegling admitted to smoking on the balcony. *See* Exhibit A, Huntsville Fire Marshall Report, attached. Additionally, investigation of Room 2207 revealed a pack of Marlboro cigarettes and a lighter present within the room. *See* Exhibit A, attached. Importantly, the Huntsville Fire Marshall found that the fire was caused due to the careless discarding of a cigarette. *See* Exhibit A, attached.

## II. DEMAND FOR SUMS CERTAIN

The origin of the fire, Room 2207, was located in Building 2. *See* Exhibit A, attached. As a result of the fire, Building 2 sustained substantial structural damage as well as smoke and water damage throughout the building. *See* Exhibit B, Cook Claim Services, Inc. Damage Analysis Report, attached. The fire burned upward through two floors and gained access to the attic, severely damaging the truss roof. *See* Exhibits A & B, attached. Approximately 40 to 50 feet of the roof structure had been severely charred and required replacement. *See* Exhibit B, attached; *see also* Exhibit C, Alex N. Sill Damage Analysis Report, attached; *see also* Exhibit D, Donan Engineering Co., Inc. Report, attached. Additionally, Building 3 sustained damage to the vinyl siding as a result of the fire. *See* Exhibits B, C & D, attached. Furniture and business personal property located within the motel rooms were extensively damaged due to the fire. *See* Exhibits B, C, D & E, attached. Mattresses present within the rooms will be lost due to odor and upholstered furniture has sustained severe damage due to smoke and water. *See* Exhibits B, C & D, attached.

In total, Acadia Insurance Company has paid to date $1,119,536.93 in order to repair the extensive fire, water, and smoke damage to the subject property due to Mr. Siegling's negligence. *See* Exhibit E, Fire Repair Invoice Spreadsheet and Signed Invoices, attached. Repairs to the subject motel took approximately one (1) year. *See* Exhibit F, Calculated Loss of Business Income Estimates by Morgan, Johnson, Carpenter & Co., attached. The above amount includes the amount calculated for business interruption loss at $617,336.00. *See* Exhibit F, attached. A print-out of the checks made payable to Yedla Management Company by Acadia Insurance Company is attached as Exhibit G.

Acadia Insurance Company, as subrogee of Yedla Management, hereby demands payment for property damage and business interruption loss caused by the negligence of Michael Siegling, an agent of the Federal Bureau of Investigation, in the amount of One Million One Hundred Nineteen Thousand Eight Hundred Seventy-Two Dollars & Ninety-Three Cents ($1,119,872.93). This amount reflects the amount necessary to repair the structural damage to the building, the replacement costs of furniture and bedding, electrical and wiring repairs, and the amount paid by Acadia Insurance Company as business interruption loss to Yedla Management Company.

### III. Conclusion

The above, the attached exhibits, and the Standard Form 95 – Claim for Damage, Injury or Death constitutes the presentment of claims as required under 28 U.S.C.A. § 2675 and 28 C.F.R. §§ 14.2 – 14.3. This letter is written with the intent to facilitate a resolution of this matter without further time and expense associated with litigation.

Please do not hesitate to contact me if you have any further questions or concerns. Thank you in advance for your time and consideration in this matter.

Best Regards,

Paul A. Grinke

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code. |
|---|---|
| Federal Bureau of Investigation Headquarters<br>935 Pennsylvania Avenue, NW<br>Washington, D.C. 20535 | Acadia Insurance Company a/s/o Yedla Management Co.<br>c/o McCathern Mooty Grinke, LLP; ATTN; Paul A. Grinke<br>3710 Rawlins Street, Suite 1600, Dallas, Texas 75219<br>Legal Counsel for Claimant |

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|
| ☐ MILITARY  ☒ CIVILIAN | | | 09/23/2010        Thursday | 2:45 a.m. |

**8. BASIS OF CLAIM** (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary.)

Acadia Insurance Company provided property insurance coverage for Yedla Management Company, Inc. Yedla Management owned the subject Country Inn & Suites.  The fire, caused by Michael Siegling, an agent of the Federal Bureau of Investigation who was acting in the course and scope of his employment on the above date, caused substantial damage to the subject Country Inn & Suites.  As a result, Acadia Insurance has been called upon to pay over $1.5 million dollars in damages to its insured, Yedla Management, and therefore has subrogation rights. Please see attached correspondence and exhibits.

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

Yedla Management Company, d/b/a Country Inn & Suites, 880 University Drive, Huntsville, Alabama, 35816.

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side.)

The property is an upscale motel known as Country Inn & Suites located at 4880 University Drive, Huntsville, Alabama, 35816. The fire created substantial structural damage, smoke and water damage throughout the property.

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM.  IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

| 11. | WITNESSES |
|---|---|

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|
| Wanda Morgan (Employee of Hotel) | 4880 University Drive, Huntsville, Alabama,  35816 |
| Don Wilkerson (Fire Marshall) | 320 Fountain Circle, Huntsville, AL 35801 |
| Michael Siegling (FBI Agent/room occupant) | 180 Grand Avenue, Oakland, California, 94612 |

| 12. (See instructions on reverse). | AMOUNT OF CLAIM (in dollars) | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
| $1,119,536.93 | | | $1,119,536.93 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|
| Paul A Grinke w/ permission Satemeter | (214) 741-2662 | 8/1/12 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

| Authorized for Local Reproduction Previous Edition is not Usable<br>95-109 | NSN 7540-00-634-4046 | STANDARD FORM 95 (REV. 2/2007)<br>PRESCRIBED BY DEPT. OF JUSTICE<br>28 CFR 14.2 |
|---|---|---|

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

15. Do you carry accident Insurance? ☐ Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number. ☒ No

Claimant, Acadia Insurance Company, is in fact the carrier asserting its subrogation right to recover payments Acadia Insurance has made as a result of the fire under its insurance contract with Yedla Management and Alabama law.

16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible? ☐ Yes ☒ No | 17. If deductible, state amount.

Claimant, Acadia Insurance Company, is in fact the carrier asserting its subrogation right to recover payments Acadia Insurance has made as a result of the fire.

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).

Claimant, Acadia Insurance Company, is in fact the carrier asserting its subrogation right to recover payments Acadia Insurance has made as a result of the fire under its insurance contract with Yedla Management and Alabama law.

19. Do you carry public liability and property damage insurance? ☐ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code). ☒ No

Claimant, Acadia Insurance Company, is in fact the carrier asserting its subrogation right to recover payments Acadia Insurance has made as a result of the fire under its insurance contract with Yedla Management and Alabama law.

## INSTRUCTIONS

Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident.  If the incident involves more than one claimant, each claimant should submit a separate claim form.

### Complete all Items - Insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid.  A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted.  Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations.  If more than one agency is involved, please state each agency.

The claim may be filled by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant.  A claim presented by an agent or legal representative must be presented in the name of the claimant.  If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

The amount claimed should be substantiated by competent evidence as follows:

*(a)* In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

*(b)* In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

*(c)* In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident.  Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

*(d)* Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
  A.  *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., or 28 C.F.R. Part 14.

B.  *Principal Purpose:* The information requested is to be used in evaluating claims.
C.  *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D.  *Effect of Failure to Respond:* Disclosure is voluntary.  However, failure to supply the requested information or to execute the form may render your claim "invalid."

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC  20530 or to the Office of Management and Budget.  Do not mail completed form(s) to these addresses.

**STANDARD FORM 95** REV. (2/2007) BACK

# Exhibit B

**A** | 04701 FDID * | AL State * | 09 22 2010 MM DD YYYY Incident Date * | 12 Station | 10-0026882 Incident Number * | 000 Exposure * | ☐ Delete ☐ Change ☐ No Activity | NFIRS -1 Basic

**B** Location*
☐ Check this box to indicate that the address for this incident is provided on the Wildland Fire Module In Section B "Alternative Location Specification". Use only for Wildland fires.    Census Tract [ ] - [ ]

- ☒ Street address
- ☐ Intersection
- ☐ In front of
- ☐ Rear of
- ☐ Adjacent to
- ☐ Directions

4880 | UNIVERSITY | DR | NW
Number/Milepost  Prefix  Street or Highway  Street Type  Suffix

Apt./Suite/Room | HUNTSVILLE City | AL State | 35816 Zip Code [ ]-[ ]

Cross street or directions, as applicable

**C** Incident Type *
111 | Building fire
Incident Type

**D** Aid Given or Received*
1 ☐ Mutual aid received
2 ☐ Automatic aid recv.
3 ☐ Mutual aid given
4 ☐ Automatic aid given
5 ☐ Other aid given
N ☒ None

Their FDID  Their State [ ] [ ]
Their Incident Number [ ]

**E1** Date & Times    Midnight is 0000
Check boxes if dates are the same as Alarm Date.    ALARM always required
|  | Month | Day | Year | Hr Min Sec |
Alarm * | 09 | 22 | 2010 | 22:40:57

ARRIVAL required, unless canceled or did not arrive
☒ Arrival * | 09 | 22 | 2010 | 22:45:45

CONTROLLED Optional, Except for wildland fires
☐ Controlled | | | |

LAST UNIT CLEARED, required except for wildland fires
Last Unit ☐ Cleared | 09 | 23 | 2010 | 02:44:15

**E2** Shift & Alarms
Local Option
2 | WEST
Shift or Platoon  Alarms  District

**E3** Special Studies
Local Option
Special Study ID# [ ]  Special Study Value [ ]

**F** Actions Taken *
11 | Extinguishment by fire
Primary Action Taken (1)

86 | Investigate
Additional Action Taken (2)

Additional Action Taken (3)

**G1** Resources *
☒ Check this box and skip this section if an Apparatus or Personnel form is used.
|  | Apparatus | Personnel |
Suppression | 0009 | 0031
EMS | |
Other | 0005 | 0009
☐ Check box if resource counts include aid received resources.

**G2** Estimated Dollar Losses & Values
LOSSES: Required for all fires if known. Optional for non fires.    ☐ None
Property $ [ ], [ 000 ], [ 000 ] ☐
Contents $ [ ], [ 000 ], [ 000 ] ☐

PRE-INCIDENT VALUE: Optional
Property $ [ ], [ 000 ], [ 000 ] ☐
Contents $ [ ], [ 000 ], [ 000 ] ☐

**Completed Modules**
- ☒ Fire-2
- ☐ Structure-3
- ☐ Civil Fire Cas.-4
- ☐ Fire Serv. Cas.-5
- ☐ EMS-6
- ☐ HazMat-7
- ☐ Wildland Fire-8
- ☒ Apparatus-9
- ☒ Personnel-10
- ☒ Arson-11

**H1*** Casualties ☐None
|  | Deaths | Injuries |
Fire Service | | |
Civilian | | |

**H2** Detector
Required for Confined Fires.
1 ☒ Detector alerted occupants
2 ☐ Detector did not alert them
U ☐ Unknown

**H3** Hazardous Materials Release
- N ☒ None
- 1 ☐ Natural Gas: slow leak, no evacuation or HazMat actions
- 2 ☐ Propane gas: <21 lb. tank (as in home BBQ grill)
- 3 ☐ Gasoline: vehicle fuel tank or portable container
- 4 ☐ Kerosene: fuel burning equipment or portable storage
- 5 ☐ Diesel fuel/fuel oil: vehicle fuel tank or portable storage
- 6 ☐ Household solvents: home/office spill, cleanup only
- 7 ☐ Motor oil: from engine or portable container
- 8 ☐ Paint: from paint cans totaling < 55 gallons
- 0 ☐ Other: Special HazMat actions required or spill > 55gal., Please complete the HazMat form

**I** Mixed Use Property
- NN ☐ Not Mixed
- 10 ☐ Assembly use
- 20 ☐ Education use
- 33 ☐ Medical use
- 40 ☐ Residential use
- 51 ☐ Row of stores
- 53 ☐ Enclosed mall
- 58 ☐ Bus. & Residential
- 59 ☐ Office use
- 60 ☐ Industrial use
- 63 ☐ Military use
- 65 ☐ Farm use
- 00 ☐ Other mixed use

**J** Property Use* Structures
- 131 ☐ Church, place of worship
- 161 ☐ Restaurant or cafeteria
- 162 ☐ Bar/Tavern or nightclub
- 213 ☐ Elementary school or kindergarten
- 215 ☐ High school or junior high
- 241 ☐ College, adult education
- 311 ☐ Care facility for the aged
- 331 ☐ Hospital

- 341 ☐ Clinic, clinic type infirmary
- 342 ☐ Doctor/dentist office
- 361 ☐ Prison or jail, not juvenile
- 419 ☐ 1-or 2-family dwelling
- 429 ☐ Multi-family dwelling
- 439 ☐ Rooming/boarding house
- 449 ☒ Commercial hotel or motel
- 459 ☐ Residential, board and care
- 464 ☐ Dormitory/barracks
- 519 ☐ Food and beverage sales

- 539 ☐ Household goods, sales, repairs
- 579 ☐ Motor vehicle/boat sales/repair
- 571 ☐ Gas or service station
- 599 ☐ Business office
- 615 ☐ Electric generating plant
- 629 ☐ Laboratory/science lab
- 700 ☐ Manufacturing plant
- 819 ☐ Livestock/poultry storage (barn)
- 882 ☐ Non-residential parking garage
- 891 ☐ Warehouse

Outside
- 124 ☐ Playground or park
- 655 ☐ Crops or orchard
- 669 ☐ Forest (timberland)
- 807 ☐ Outdoor storage area
- 919 ☐ Dump or sanitary landfill
- 931 ☐ Open land or field

- 936 ☐ Vacant lot
- 938 ☐ Graded/care for plot of land
- 946 ☐ Lake, river, stream
- 951 ☐ Railroad right of way
- 960 ☐ Other street
- 961 ☐ Highway/divided highway
- 962 ☐ Residential street/driveway

- 981 ☐ Construction site
- 984 ☐ Industrial plant yard

Lookup and enter a Property Use code only if you have NOT checked a Property Use box:
Property Use 449
Hotel/motel, commercial
NFIRS-1 Revision 03/11/99

EXHIBIT A

Printed 10/05/2010 12:45:25   DRW   FD-DWILKERSON   04701   09/22/2010   10-0026882

**K1   Person/Entity Involved**
Local Option

Business name (if applicable)                    510 - 251 - 4022
                                                 Area Code   Phone Number

☐ Check This Box if
same address as
incident location.
Then skip the three
duplicate address
lines.

Mr.,Ms., Mrs.   First Name: Michael       MI       Last Name: Siegling       Suffix

Number: 180     Prefix   Street or Highway: Grand       Street Type: AVE   Suffix

Post Office Box           Apt./Suite/room   City: Oakland

State: CA   Zip Code: 94612   -

☐ More people involved? Check this box and attach Supplemental Forms (NFIRS-1S) as necessary

**K2 Owner**   ☐ Same as person involved?
Then check this box and skip
the rest of this section.
Local Option

Business name (if Applicable)                    Area Code - Phone Number -

☐ Check this box if
same address as
incident location.
Then skip the three
duplicate address
lines.

Mr.,Ms., Mrs.   First Name       MI       Last Name       Suffix

Number           Prefix   Street or Highway       Street Type   Suffix

Post Office Box           Apt./Suite/Room   City

State   Zip Code   -

---

**L   Remarks**
Local Option
09/23/2010 02:08:10 AM MDD

E12 arrived on scene to find smoke billowing from the courtyard of the Country Inn Suites.
After making entry into the courtyard, we saw that the balcony on the 2nd floor and the
balcony on the 3rd floor were completely engulfed with flame.  We advanced a charged 1 3/4"
line into the courtyard and knocked down the fire at that point.  Additional crews were then
advanced to the fire floor.  Complete salvage and overhaul efforts were then completed by
crews on the fire floor.  Ladder 12 was then set up to check for fire extension on the roof
level.  Investigator Dan Wilkerson was dispatched and scene was eventually turned over to
him.

Hose used by E12 crew :   2 ea.   1 3/4" preconnects      (400 ft)
                                    1         300 ft of 3" hose then wyed off to
sections of 1 3/4"

See Investigators report for further.
------------------------------------------------------------------------
09/23/2010 07:35:34 AM HVS

E5B crew approached from south end of building. We advanced 150' of 2 1/2" line with 100' of
1 3/4" line from hi-rise pack attached via reducer, to fire floor and into room. 225' of
supply line from the hydrant south of building on University Dr. to E5B.
09/23/2010 07:35:23 AM HVS

---

**L   Authorization**

| | Officer in charge ID | Signature | Position or rank | Assignment | Month | Day | Year |
|---|---|---|---|---|---|---|---|
| | 03594 | KAY, JAMES M | DTC | 206 | 09 | 23 | 2010 |

Check
Box if ☐   10469   DODSON, MICHAEL D   CAPT   E12   09   23   2010
same
as Officer   Member making report ID   Signature   Position or rank   Assignment   Month   Day   Year
in charge.

App'x Page 32

| | | MM DD YYYY | | | | |
|---|---|---|---|---|---|---|
| 04701 | AL | 9 22 2010 | 12 | 10-0026882 | 000 | Complete Narrative |
| FDID * | State * | Incident Date * | Station | Incident Number * | Exposure * | |

Narrative:
09/23/2010 02:08:10 AM MDD

E12 arrived on scene to find smoke billowing from the courtyard of the Country Inn Suites. After making entry into the courtyard, we saw that the balcony on the 2nd floor and the balcony on the 3rd floor were completely engulfed with flame. We advanced a charged 1 3/4" line into the courtyard and knocked down the fire at that point. Additional crews were then advanced to the fire floor. Complete salvage and overhaul efforts were then completed by crews on the fire floor. Ladder 12 was then set up to check for fire extension on the roof level. Investigator Dan Wilkerson was dispatched and scene was eventually turned over to him.

Hose used by E12 crew :    2 ea.    1 3/4" preconnects    (400 ft)
                                            1            300 ft of 3" hose then wyed off to
sections of 1 3/4"

See Investigators report for further.
---------------------------------------------------------------------------
09/23/2010 07:35:34 AM HVS

E5B crew approached from south end of building. We advanced 150' of 2 1/2" line with 100' of 1 3/4" line from hi-rise pack attached via reducer, to fire floor and into room. 225' of supply line from the hydrant south of building on University Dr. to E5B.
09/23/2010 07:35:23 AM HVS

COH/AL                                                      04701    09/22/2010    10-0026882

**A**

| 04701 | AL | 09 | 22 | 2010 | | 12 | 10-0026882 | 000 | ☐ Delete | NFIRS -2 |
|---|---|---|---|---|---|---|---|---|---|---|
| FDID | State | Incident Date | | YYYY | | Station | Incident Number | Exposure | ☐ Change | Fire |

MM — DD — YYYY
FDID * | State * | Incident Date * | Station | Incident Number * | Exposure *
☐ Delete  ☐ Change  ☐ No Activity

**B  Property Details**

**C  On-Site Materials** ☐None  or Products

*Complete if there were any significant amounts of commercial, industrial, energy or agricultural products or materials on the Property, whether or not they became involved*

Enter up to three codes.  Check one or more boxes for each code entered.

**B1**  | 0003 | ☐ Not Residential
*Estimated Number of residential living units in building of origin whether or not all units became involved*

On-site material (1)
1 ☐ Bulk storage or warehousing
2 ☐ Processing or manufacturing
3 ☐ Packaged goods for sale
4 ☐ Repair or service

**B2**  | 001 | ☐ Buildings not involved
Number of buildings involved

On-site material (2)
1 ☐ Bulk storage or warehousing
2 ☐ Processing or manufacturing
3 ☐ Packaged goods for sale
4 ☐ Repair or service

**B3**  | | ☐ None
Acres burned (outside fires)  ☐ Less than one acre

On-site material (3)
1 ☐ Bulk storage or warehousing
2 ☐ Processing or manufacturing
3 ☐ Packaged goods for sale
4 ☐ Repair or service

**D  Ignition**

**E1  Cause of Ignition**
☐ Check box if this is an exposure report. Skip to section G

**E3  Human Factors Contributing To Ignition**
Check all applicable boxes

**D1**  | 001 | See Investigators |
Area of fire origin *

1 ☐ Intentional
2 ☐ Unintentional
3 ☐ Failure of equipment or heat source
4 ☐ Act of nature
5 ☒ Cause under investigation
U ☐ Cause undetermined after investigation

1 ☐ Asleep                    ☒ None
2 ☐ Possibly impaired by alcohol or drugs
3 ☐ Unattended person
4 ☐ Possibly mental disabled
5 ☐ Physically Disabled
6 ☐ Multiple persons involved

**D2**  | 001 | See Investigators |
Heat source *

**D3**  | 001 | See Investigators | 1 ☐ Check box if fire spread was confined to object of origin
Item first ignited *

**E2  Factors Contributing To Ignition**

| UU1 | Undetermined/See | ☒ None |
Factor Contributing To Ignition (1)

7 ☐ Age was a factor
Estimated age of person envolved | |

**D4**  | 001 | See Investigators |
Type of material first ignited    Required only if item first ignited code is 00 or <70

Factor Contributing To Ignition (2)

1 ☐ Male        2 ☐ Female

**F1  Equipment Involved In Ignition**
☐ None If Equipment was not involved,Skip to Section G

| |
Equipment Involved

Brand | |
Model | |
Serial # | |
Year | |

**F2  Equipment Power**

| |
Equipment Power Source

**F3  Equipment Portability**

1 ☐ Portable
2 ☐ Stationary

Portable equipment normally can be moved by one person, is designed to be use in multiple locations, and requires no tools to install.

**G  Fire Suppression Factors**

Enter up to three codes.  ☐ None

| |
Fire suppression factor (1)

| |
Fire suppression factor (2)

| |
Fire suppression factor (3)

**H1  Mobile Property Involved**

☐ None

1 ☐ Not involved in ignition, but burned
2 ☐ Involved in ignition, but did not burn
3 ☐ Involved in ignition and burned

**H2  Mobile Property Type & Make**

| |
Mobile property type

| |
Mobile property make

| |
Noblic property model

| |
Year

**Local Use**

☐ Pre-Fire Plan Available
*Some of the information presented in this report may be based upon reports from other Agencies*

☐ Arson report attached
☐ Police report attached
☐ Coroner report attached
☐ Other reports attached

| |
License Plate Number    State

| |
VIN Number

NFIRS-2 Revision 01/19/99

**A**

| FDID * | State * | Incident Date * | Station | Incident Number * | Exposure * | | NFIRS - 9 Apparatus or Resources |
|---|---|---|---|---|---|---|---|
| 04701 | AL | MM 9 DD 22 YYYY 2010 | 12 | 10-0026882 | 000 | ☐ Delete ☐ Change | |

**B** Apparatus or * Resource

| | | Date and Times (Check if same as alarm date) Month Day Year  Hour Min | Sent [X] | Number of * People | Use (Check ONE box for each apparatus to indicate its main use at the incident.) | Actions Taken |
|---|---|---|---|---|---|---|
| **1** ID 102 Type 92 | Dispatch [X] Arrival [X] Clear ☐ | 9 22 2010 22:56 / 9 22 2010 23:27 / 9 23 2010 00:51 | [X] | 1 | ☐ Suppression ☐ EMS [X] Other | ⌊_⌋ ⌊_⌋ ⌊_⌋ |
| **2** ID 120 Type 921 | Dispatch [X] Arrival [X] Clear ☐ | 9 22 2010 22:50 / 9 22 2010 23:11 / 9 23 2010 02:44 | [X] | 1 | ☐ Suppression ☐ EMS [X] Other | ⌊_⌋ ⌊_⌋ ⌊_⌋ |
| **3** ID 203 Type 92 | Dispatch [X] Arrival [X] Clear ☐ | 9 22 2010 22:49 / 9 22 2010 22:58 / 9 23 2010 00:37 | [X] | 1 | ☐ Suppression ☐ EMS [X] Other | ⌊_⌋ ⌊_⌋ ⌊_⌋ |
| **4** ID 204 Type 92 | Dispatch [X] Arrival [X] Clear [X] | 9 22 2010 23:00 / 9 22 2010 23:01 / 9 22 2010 23:51 | [X] | 1 | ☐ Suppression ☐ EMS [X] Other | ⌊_⌋ ⌊_⌋ ⌊_⌋ |
| **5** ID 206 Type 92 | Dispatch [X] Arrival [X] Clear ☐ | 9 22 2010 22:42 / 9 22 2010 22:47 / 9 23 2010 01:04 | [X] | 1 | ☐ Suppression ☐ EMS [X] Other | ⌊_⌋ ⌊_⌋ ⌊_⌋ |
| **6** ID E12 Type 11 | Dispatch [X] Arrival [X] Clear ☐ | 9 22 2010 22:42 / 9 22 2010 22:45 / 9 23 2010 00:29 | [X] | 3 | [X] Suppression ☐ EMS ☐ Other | ⌊_⌋ ⌊_⌋ ⌊_⌋ |
| **7** ID E15 Type 11 | Dispatch [X] Arrival [X] Clear ☐ | 9 22 2010 22:42 / 9 22 2010 22:48 / 9 23 2010 00:38 | [X] | 5 | [X] Suppression ☐ EMS ☐ Other | ⌊_⌋ ⌊_⌋ ⌊_⌋ |
| **8** ID E16 Type 11 | Dispatch [X] Arrival [X] Clear ☐ | 9 22 2010 22:42 / 9 22 2010 22:48 / 9 23 2010 00:28 | [X] | 5 | [X] Suppression ☐ EMS ☐ Other | ⌊_⌋ ⌊_⌋ ⌊_⌋ |
| **9** ID E1A Type 11 | Dispatch [X] Arrival [X] Clear [X] | 9 22 2010 22:53 / 9 22 2010 22:59 / 9 23 2010 23:27 | [X] | 4 | [X] Suppression ☐ EMS ☐ Other | ⌊_⌋ ⌊_⌋ ⌊_⌋ |

COH/AL

04701    09/22/2010    10-0026882

App'x Page 35

**A** — NFIRS-9 Apparatus or Resources

| FDID | State | MM-DD-YYYY Incident Date | Station | Incident Number | Exposure | |
|------|-------|--------------------------|---------|-----------------|----------|---|
| 04701 | AL | 9 22 2010 | 12 | 10-0026882 | 000 | ☐ Delete ☐ Change |

**B** — Apparatus or Resource

| # | ID | Type | Date and Times (Check if same as alarm date) | Sent | Number of People | Use | Actions Taken |
|---|----|----|----|----|----|----|----|

| 1 | E1B | 11 | Dispatch ☒ 9 22 2010 22:49 / Arrival ☒ 9 22 2010 22:58 / Clear ☐ 9 23 2010 00:25 | ☒ | 5 | ☒ Suppression ☐ EMS ☐ Other | |
| 2 | E5A | 11 | Dispatch ☒ 9 22 2010 22:49 / Arrival ☒ 9 22 2010 22:55 / Clear ☒ 9 23 2010 23:18 | ☒ | 4 | ☒ Suppression ☐ EMS ☐ Other | |
| 3 | E5B | 11 | Dispatch ☒ 9 22 2010 22:43 / Arrival ☒ 9 22 2010 22:49 / Clear ☐ 9 23 2010 00:40 | ☒ | 5 | ☒ Suppression ☐ EMS ☐ Other | |
| 4 | L12 | 12 | Dispatch ☒ 9 22 2010 22:42 / Arrival ☒ 9 22 2010 22:46 / Clear ☐ 9 23 2010 00:35 | ☒ | 2 | ☒ Suppression ☐ EMS ☐ Other | |
| 5 | SR15 | 60 | Dispatch ☒ 9 22 2010 22:42 / Arrival ☒ 9 22 2010 22:49 / Clear ☐ 9 23 2010 00:51 | ☒ | 2 | ☒ Suppression ☐ EMS ☐ Other | |
| 6 | | | Dispatch ☐ / Arrival ☐ / Clear ☐ | ☐ | | ☐ Suppression ☐ EMS ☐ Other | |
| 7 | | | Dispatch ☐ / Arrival ☐ / Clear ☐ | ☐ | | ☐ Suppression ☐ EMS ☐ Other | |
| 8 | | | Dispatch ☐ / Arrival ☐ / Clear ☐ | ☐ | | ☐ Suppression ☐ EMS ☐ Other | |
| 9 | | | Dispatch ☐ / Arrival ☐ / Clear ☐ | ☐ | | ☐ Suppression ☐ EMS ☐ Other | |

**Type of Apparatus or Resources**

Ground Fire Suppression
11 Engine
12 Truck or aerial
13 Quint
14 Tanker & pumper combination
16 Brush truck
17 ARF (Aircraft Rescue and Firefighting)
10 Ground fire suppression, other

Heavy Ground Equipment
21 Dozer or plow
22 Tractor
24 Tanker or tender
20 Heavy equipment, other

Aircraft
41 Aircraft: fixed wing tanker
42 Helitanker
43 Helicopter
40 Aircraft, other

Marine Equipment
51 Fire boat with pump
52 Boat, no pump
50 Marine apparatus, other

Support Equipment
61 Breathing apparatus support
62 Light and air unit
60 Support apparatus, other

Medical & Rescue
71 Rescue unit
72 Urban Search & rescue unit
73 High angle rescue unit
75 BLS unit
76 ALS unit
70 Medical and rescue unit, other

Other
91 Mobile command post
92 Chief officer car
93 HazMat unit
94 Type 1 hand crew
95 Type 2 hand crew
99 Privately owned vehicle
00 Other apparatus/resource

NN None
UU Undetermined

More Apparatus? Use Additional Sheets

NFIRS-9 Revision 11/17/98

COH/AL          04701   09/22/2010   10-0026882

App'x Page 36

**A** | C4701 | AL | MM 9 DD 22 YYYY 2010 | 12 | 10-0026882 | 000 | ☐ Delete ☐ Change | NFIRS - 10 Personnel

FDID * | State * | Incident Date * | Station | Incident Number * | Exposure *

**B** Apparatus or Resource *

Use codes listed below

| | Date and Times Check if same as alarm date | Sent | Number of People * | Use Check ONE box for each apparatus to indicate its main use at the incident. | Actions Taken List up to 4 actions for each apparatus and each personnel. |
|---|---|---|---|---|---|
| | Month Day Year Hours/mins | | | | |

**1** ID 102   Type 92

| | | | | Sent | | |
|---|---|---|---|---|---|---|
| Dispatch | ☒ | 9 | 22 | 2010 | 22:56 | |
| Arrival | ☒ | 9 | 22 | 2010 | 23:27 | Sent ☒ | 1 |
| Clear | ☐ | 9 | 23 | 2010 | 00:38 | |

☐ Suppression
☐ EMS
☒ Other

| Personnel ID | Name | Rank or Grade | Attend ☒ | Action Taken | Action Taken | Action Taken | Action Taken |
|---|---|---|---|---|---|---|---|
| 07257 | MCFARLEN, HOWARD | DC | X | | | | |

**2** ID 120   Type 921

| | | | | Sent | | |
|---|---|---|---|---|---|---|
| Dispatch | ☒ | 9 | 22 | 2010 | 22:50 | |
| Arrival | ☒ | 9 | 22 | 2010 | 23:11 | Sent ☒ | 1 |
| Clear | ☐ | 9 | 23 | 2010 | 02:44 | |

☐ Suppression
☐ EMS
☒ Other

| Personnel ID | Name | Rank or Grade | Attend ☒ | Action Taken | Action Taken | Action Taken | Action Taken |
|---|---|---|---|---|---|---|---|
| 12234 | WILKERSON, DANIEL | FPI | X | | | | |

**3** ID 203   Type 92

| | | | | Sent | | |
|---|---|---|---|---|---|---|
| Dispatch | ☒ | 9 | 22 | 2010 | 22:49 | |
| Arrival | ☒ | 9 | 22 | 2010 | 22:58 | Sent ☒ | 1 |
| Clear | ☐ | 9 | 23 | 2010 | 00:27 | |

☐ Suppression
☐ EMS
☒ Other

| Personnel ID | Name | Rank or Grade | Attend ☒ | Action Taken | Action Taken | Action Taken | Action Taken |
|---|---|---|---|---|---|---|---|
| 09901 | LOVE, THERRON | DTC | X | | | | |

**A**

| FDID | State | MM DD YYYY Incident Date | Station | Incident Number | Exposure | | NFIRS - 10 Personnel |
|---|---|---|---|---|---|---|---|
| 04701 * | AL * | 9 22 2010 * | 12 | 10-0026882 | 000 * | ☐ Delete  ☐ Change | |

**B** Apparatus or Resource *

Use codes listed below

**Date and Times**
Check if same as alarm date

| | | Month Day Year Hours/mins | Sent | Number of People * | Use
Check ONE box for each apparatus to indicate its main use at the incident. | Actions Taken
List up to 4 actions for each apparatus and each personnel. |
|---|---|---|---|---|---|---|

| | | | Sent ☒ | | | |

---

**1** ID 204    Type 92

| | Dispatch ☒ 9 22 2010 23:00 | Sent | | ☐ Suppression | |
|---|---|---|---|---|---|
| | Arrival ☒ 9 22 2010 23:01 | ☒ | 1 | ☐ EMS | |
| | Clear ☒ 9 22 2010 23:42 | | | ☒ Other | |

| Personnel ID | Name | Rank or Grade | Attend ☒ | Action Taken | Action Taken | Action Taken | Action Taken |
|---|---|---|---|---|---|---|---|
| 07649 | OLIVER, STEPHEN | DTC | X | | | | |

---

**2** ID 206    Type 92

| | Dispatch ☒ 9 22 2010 22:42 | Sent | | ☐ Suppression | |
|---|---|---|---|---|---|
| | Arrival ☒ 9 22 2010 22:47 | ☒ | 1 | ☐ EMS | |
| | Clear ☐ 9 23 2010 00:34 | | | ☒ Other | |

| Personnel ID | Name | Rank or Grade | Attend ☒ | Action Taken | Action Taken | Action Taken | Action Taken |
|---|---|---|---|---|---|---|---|
| 03594 | KAY, JAMES | DTC | X | | | | |

---

**3** ID E12    Type 11

| | Dispatch ☒ 9 22 2010 22:42 | Sent | | ☒ Suppression | |
|---|---|---|---|---|---|
| | Arrival ☒ 9 22 2010 22:45 | ☒ | 3 | ☐ EMS | |
| | Clear ☐ 9 23 2010 00:27 | | | ☐ Other | |

| Personnel ID | Name | Rank or Grade | Attend ☒ | Action Taken | Action Taken | Action Taken | Action Taken |
|---|---|---|---|---|---|---|---|
| 09900 | HELMS, TERRY | DR | X | | | | |
| 10469 | DODSON, MICHAEL | CAPT | X | | | | |
| 14194 | CRUMBLEY, PAUL | FF | X | | | | |

App'x Page 38

**A**

| 04701 | AL | MM 9 DD 22 YYYY 2010 | 12 | 10-0026882 | 000 | ☐ Delete ☐ Change | NFIRS - 10 Personnel |
|---|---|---|---|---|---|---|---|
| PDID * | State * | Incident Date * | Station | Incident Number * | Exposure * | | |

**B** Apparatus or Resource *
Use codes listed below

| | Date and Times — Check if same as alarm date | Sent | Number of People | Use — Check ONE box for each apparatus to indicate its main use at the incident. | Actions Taken — List up to 4 actions for each apparatus and each personnel. |
|---|---|---|---|---|---|

---

**1** ID E15   Type 11

| | | Month | Day | Year | Hours/mins | Sent | | Use | Actions Taken |
|---|---|---|---|---|---|---|---|---|---|
| Dispatch | ☒ | 9 | 22 | 2010 | 22:42 | ☒ | 5 | ☒ Suppression ☐ EMS ☐ Other | ☐ ☐   ☐ ☐ |
| Arrival | ☒ | 9 | 22 | 2010 | 22:48 | | | | |
| Clear | ☐ | 9 | 23 | 2010 | 00:30 | | | | |

| Personnel ID | Name | Rank or Grade | Attend ☒ | Action Taken | Action Taken | Action Taken | Action Taken |
|---|---|---|---|---|---|---|---|
| 09378 | ROBINSON, MARTY | CAPT-RV | X | | | | |
| 11328 | PEARSON, AARON | DR-RV | X | | | | |
| 13349 | MEDLEY, SEAN | FF | X | | | | |
| 13867 | MCMONIGLE, ROBERT | FF | X | | | | |
| 14202 | BREWER, TYLER | FF | X | | | | |

---

**2** ID E16   Type 11

| | | Month | Day | Year | Hours/mins | Sent | | Use | Actions Taken |
|---|---|---|---|---|---|---|---|---|---|
| Dispatch | ☒ | 9 | 22 | 2010 | 22:42 | ☒ | 5 | ☒ Suppression ☐ EMS ☐ Other | ☐ ☐   ☐ ☐ |
| Arrival | ☒ | 9 | 22 | 2010 | 22:48 | | | | |
| Clear | ☐ | 9 | 23 | 2010 | 00:22 | | | | |

| Personnel ID | Name | Rank or Grade | Attend ☒ | Action Taken | Action Taken | Action Taken | Action Taken |
|---|---|---|---|---|---|---|---|
| 06475 | ADCOCK, JOSEPH | DR | X | | | | |
| 07312 | ATCHLEY, MICHAEL | CAPT | X | | | | |
| 09150 | HORNBUCKLE, GARY | FF | X | | | | |
| 14762 | MAPLES, BRIAN | FF | X | | | | |
| 14781 | CLEMONS, SCOTT | FF | X | | | | |

---

**3** ID E1A   Type 11

| | | Month | Day | Year | Hours/mins | Sent | | Use | Actions Taken |
|---|---|---|---|---|---|---|---|---|---|
| Dispatch | ☒ | 9 | 22 | 2010 | 22:53 | ☒ | 4 | ☒ Suppression ☐ EMS ☐ Other | ☐ ☐   ☐ ☐ |
| Arrival | ☒ | 9 | 22 | 2010 | 22:59 | | | | |
| Clear | ☒ | 9 | 22 | 2010 | 23:16 | | | | |

| Personnel ID | Name | Rank or Grade | Attend ☒ | Action Taken | Action Taken | Action Taken | Action Taken |
|---|---|---|---|---|---|---|---|
| 10470 | DRAKE, DENNIS | DR | X | | | | |
| 10854 | WHITMAN, DAVID | CAPT-RV | X | | | | |
| 13481 | CASTEEL, KEITH | FF | X | | | | |
| 14776 | ANDREWS, CURTIS | FF | X | | | | |

COH/AL

NFIRS-10 Revision 11/17/98
04701      09/22/2010      10-0026882

**A**

| FDID * | State * | MM DD YYYY Incident Date * | Station | Incident Number * | Exposure * | |
|---|---|---|---|---|---|---|
| 04701 | AL | 9 \| 22 \| 2010 | 12 | 10-0026882 | 000 | ☐ Delete  ☐ Change |

NFIRS - 10
Personnel

**B Apparatus or Resource**
Use codes listed below

| | Date and Times — Check if same as alarm date | Sent | Number of People * | Use — Check ONE box for each apparatus to indicate its main use at the incident. | Actions Taken — List up to 4 actions for each apparatus and each personnel. |
|---|---|---|---|---|---|

**1** ID E1B   Type 11

| | Month | Day | Year | Hours/mins | Sent | | |
|---|---|---|---|---|---|---|---|
| Dispatch ☒ | 9 | 22 | 2010 | 22:49 | Sent ☒ | 5 | ☒ Suppression |
| Arrival ☒ | 9 | 22 | 2010 | 22:58 | | | ☐ EMS |
| Clear ☐ | 9 | 23 | 2010 | 00:25 | | | ☐ Other |

| Personnel ID | Name | Rank or Grade | Attend ☒ | Action Taken | Action Taken | Action Taken | Action Taken |
|---|---|---|---|---|---|---|---|
| 09141 | FRY, DAVID | CAPT | X | | | | |
| 09667 | GRAVES, WILLIAM | DR | X | | | | |
| 11321 | COCKRELL, JOHNNY | DR-RV | X | | | | |
| 14192 | PFEIFFER, JACOB | FF | X | | | | |
| 14772 | REED, MICHAEL | FF | X | | | | |

**2** ID E5A   Type 11

| | Month | Day | Year | Hours/mins | Sent | | |
|---|---|---|---|---|---|---|---|
| Dispatch ☒ | 9 | 22 | 2010 | 22:49 | Sent ☒ | 4 | ☒ Suppression |
| Arrival ☒ | 9 | 22 | 2010 | 22:55 | | | ☐ EMS |
| Clear ☒ | 9 | 22 | 2010 | 23:18 | | | ☐ Other |

| Personnel ID | Name | Rank or Grade | Attend ☒ | Action Taken | Action Taken | Action Taken | Action Taken |
|---|---|---|---|---|---|---|---|
| 07666 | WALTERS, JAMES | DR | X | | | | |
| 09905 | ROBINSON, DAVID | CAPT | X | | | | |
| 13107 | COFFMAN, JAMES | FF | X | | | | |
| 13352 | LIMA, SANTIAGO | FF | X | | | | |

**3** ID E5B   Type 11

| | Month | Day | Year | Hours/mins | Sent | | |
|---|---|---|---|---|---|---|---|
| Dispatch ☒ | 9 | 22 | 2010 | 22:43 | Sent ☒ | 5 | ☒ Suppression |
| Arrival ☒ | 9 | 22 | 2010 | 22:49 | | | ☐ EMS |
| Clear ☐ | 9 | 23 | 2010 | 00:33 | | | ☐ Other |

| Personnel ID | Name | Rank or Grade | Attend ☒ | Action Taken | Action Taken | Action Taken | Action Taken |
|---|---|---|---|---|---|---|---|
| 03599 | SMITH, HENRY | CAPT | X | | | | |
| 11335 | GAITHER, TERRY | DR | X | | | | |
| 12228 | SHELTON, JONATHAN | DR-RV | X | | | | |
| 14763 | MILLS, JIMMY | FF | X | | | | |
| 14784 | EAKIN, TODD | FF | X | | | | |

COH/AL

NFIRS-10 Revision 11/17/98

04701    09/22/2010    10-0026882

App'x Page 40

**A**

| FJID | State | MM DD YYYY Incident Date | Station | Incident Number | Exposure | | |
|---|---|---|---|---|---|---|---|
| 04701 * | AL * | 9 22 2010 * | 12 | 10-0026882 * | 000 | ☐ Delete ☐ Change | NFIRS - 10 Personnel |

**B** Apparatus or Resource *

Use codes listed below

Date and Times — Check if same as alarm date

| | Sent | Number of People * | Use — Check ONE box for each apparatus to indicate its main use at the incident. | Actions Taken — List up to 4 actions for each apparatus and each personnel. |
|---|---|---|---|---|

**1** ID L12   Type 12

| | | Month Day Year | Hours/mins | Sent | | Use | |
|---|---|---|---|---|---|---|---|
| Dispatch | ☒ | 9 22 2010 | 22:42 | ☒ | 2 | ☒ Suppression | ☐ ☐ ☐ ☐ |
| Arrival | ☒ | 9 22 2010 | 22:46 | | | ☐ EMS | |
| Clear | ☐ | 9 23 2010 | 00:31 | | | ☐ Other | |

| Personnel ID | Name | Rank or Grade | Attend ☒ | Action Taken | Action Taken | Action Taken | Action Taken |
|---|---|---|---|---|---|---|---|
| 09140 | GRAY, DENNIS | DR | X | | | | |
| 10846 | PHILLIPS, JASON | DR-RV | X | | | | |

**2** ID SR15   Type 60

| | | Month Day Year | Hours/mins | Sent | | Use | |
|---|---|---|---|---|---|---|---|
| Dispatch | ☒ | 9 22 2010 | 22:42 | ☒ | 2 | ☒ Suppression | ☐ ☐ ☐ ☐ |
| Arrival | ☒ | 9 22 2010 | 22:49 | | | ☐ EMS | |
| Clear | ☐ | 9 23 2010 | 00:30 | | | ☐ Other | |

| Personnel ID | Name | Rank or Grade | Attend ☒ | Action Taken | Action Taken | Action Taken | Action Taken |
|---|---|---|---|---|---|---|---|
| 12230 | SUMMITT, SCOTT | DR | X | | | | |
| 12936 | HILL, MATTHEW | DR-RV | X | | | | |

**3** ID   Type

| | | Month Day Year | Hours/mins | Sent | | Use | |
|---|---|---|---|---|---|---|---|
| Dispatch | ☐ | | | ☐ | | ☐ Suppression | ☐ ☐ ☐ ☐ |
| Arrival | ☐ | | | | | ☐ EMS | |
| Clear | ☐ | | | | | ☐ Other | |

| Personnel ID | Name | Rank or Grade | Attend ☒ | Action Taken | Action Taken | Action Taken | Action Taken |
|---|---|---|---|---|---|---|---|
| | | | ☐ | | | | |
| | | | ☐ | | | | |
| | | | ☐ | | | | |
| | | | ☐ | | | | |
| | | | ☐ | | | | |
| | | | ☐ | | | | |

| 04701 | AL | 9 22 | 2010 | 12 | 10-0026882 | 000 | Responding |
|---|---|---|---|---|---|---|---|
| FDID | State | Incident Date | | Station | Incident Number | Exposure | Units/Personnel |

| Unit | Notify Time | Enroute Time | Arrival Time | Cleared Time |
|---|---|---|---|---|
| 102 102 | 22:56:43 | 23:04:31 | 23:27:04 | 00:38:12 |

| Staff ID\Staff Name | | Activity | Rank | Position | Role |
|---|---|---|---|---|---|
| 07257 | MCFARLEN, HOWARD W | Fire At Scene | Deputy Chie | | |

| Unit | Notify Time | Enroute Time | Arrival Time | Cleared Time |
|---|---|---|---|---|
| 120 120 | 22:50:22 | 22:58:55 | 23:11:58 | 02:44:15 |

| Staff ID\Staff Name | | Activity | Rank | Position | Role |
|---|---|---|---|---|---|
| 12234 | WILKERSON, DANIEL R | Fire At Scene | Fire Preven | | |

| Unit | Notify Time | Enroute Time | Arrival Time | Cleared Time |
|---|---|---|---|---|
| 203 203 | 22:49:43 | 22:49:44 | 22:58:43 | 00:27:21 |

| Staff ID\Staff Name | | Activity | Rank | Position | Role |
|---|---|---|---|---|---|
| 09901 | LOVE, THERRON | Fire At Scene | District Ch | | |

| Unit | Notify Time | Enroute Time | Arrival Time | Cleared Time |
|---|---|---|---|---|
| 204 204 | 23:00:16 | 23:00:17 | 23:01:20 | 23:42:58 |

| Staff ID\Staff Name | | Activity | Rank | Position | Role |
|---|---|---|---|---|---|
| 07649 | OLIVER, STEPHEN J | Fire At Scene | District Ch | | |

| Unit | Notify Time | Enroute Time | Arrival Time | Cleared Time |
|---|---|---|---|---|
| 206 206 | 22:42:02 | 22:45:42 | 22:47:34 | 00:34:37 |

| Staff ID\Staff Name | | Activity | Rank | Position | Role |
|---|---|---|---|---|---|
| 03594 | KAY, JAMES M | Fire At Scene | District Ch | | |

| Unit | Notify Time | Enroute Time | Arrival Time | Cleared Time |
|---|---|---|---|---|
| E12 Engine 12 | 22:42:02 | 22:43:20 | 22:45:45 | 00:27:16 |

| Staff ID\Staff Name | | Activity | Rank | Position | Role |
|---|---|---|---|---|---|
| 09900 | HELMS, TERRY N | Fire At Scene | Driver/Engi | | |
| 10469 | DODSON, MICHAEL D | Fire At Scene | Captain | | |
| 14194 | CRUMBLEY, PAUL ANTHONY | Fire At Scene | Firefighter | | |

| Unit | Notify Time | Enroute Time | Arrival Time | Cleared Time |
|---|---|---|---|---|
| E15 Engine 15 | 22:42:02 | 22:43:50 | 22:48:11 | 00:30:39 |

| Staff ID\Staff Name | | Activity | Rank | Position | Role |
|---|---|---|---|---|---|
| 09378 | ROBINSON, MARTY L | Fire At Scene | Roving Capt | | |
| 11328 | PEARSON, AARON E | Fire At Scene | Roving Driv | | |
| 13349 | MEDLEY, SEAN MICHAEL | Fire At Scene | Firefighter | | |
| 13867 | MCMONIGLE, ROBERT W | Fire At Scene | Firefighter | | |
| 14202 | BREWER, TYLER MATTHEW | Fire At Scene | Firefighter | | |

App'x Page 42

| 04701 | AL | 9 | 22 | 2010 | 12 | 10-0026882 | 000 | Responding Units/Personnel |
|---|---|---|---|---|---|---|---|---|
| FDIP | State | Incident Date | | | Station | Incident Number | Exposure | |

**E16 Engine 16**    22:42:02    22:43:57    22:48:06    00:22:53

| Staff ID\Staff Name | | Activity | Rank | Position | Role |
|---|---|---|---|---|---|
| 06475 | ADCOCK, JOSEPH MARK | Fire At Scene | Driver/Engi | | |
| 07312 | ATCHLEY, MICHAEL D | Fire At Scene | Captain | | |
| 09150 | HORNBUCKLE, GARY L | Fire At Scene | Firefighter | | |
| 14762 | MAPLES, BRIAN D | Fire At Scene | Firefighter | | |
| 14781 | CLEMONS, SCOTT A | Fire At Scene | Firefighter | | |

**E1A Engine 1A**    22:53:13    22:53:14    22:59:58    23:16:47

| Staff ID\Staff Name | | Activity | Rank | Position | Role |
|---|---|---|---|---|---|
| 10470 | DRAKE, DENNIS E | Fire At Scene | Driver/Engi | | |
| 10854 | WHITMAN, DAVID A | Fire At Scene | Roving Capt | | |
| 13481 | CASTEEL, KEITH A. | Fire At Scene | Firefighter | | |
| 14776 | ANDREWS, CURTIS B | Fire At Scene | Firefighter | | |

**Unit Narrative**

Stood by as RIT team. Was released by 204.

**E1B Engine 1B**    22:49:47    22:51:11    22:58:29    00:25:37

| Staff ID\Staff Name | | Activity | Rank | Position | Role |
|---|---|---|---|---|---|
| 09141 | FRY, DAVID M | Fire At Scene | Captain | | |
| 09667 | GRAVES, WILLIAM T | Fire At Scene | Driver/Engi | | |
| 11321 | COCKRELL, JOHNNY L | Fire At Scene | Roving Driv | | |
| 14192 | PFEIFFER, JACOB ANDREW | Fire At Scene | Firefighter | | |
| 14772 | REED, MICHAEL S | Fire At Scene | Firefighter | | |

**E5A Engine 5A**    22:49:47    22:51:37    22:55:42    23:18:37

| Staff ID\Staff Name | | Activity | Rank | Position | Role |
|---|---|---|---|---|---|
| 07666 | WALTERS, JAMES R | Fire At Scene | Driver/Engi | | |
| 09905 | ROBINSON, DAVID T | Fire At Scene | Captain | | |
| 13107 | COFFMAN, JAMES A. | Fire At Scene | Firefighter | | |
| 13352 | LIMA, SANTIAGO BARTOLOME' | Fire At Scene | Firefighter | | |

**E5B Engine 5B**    22:43:26    22:45:18    22:49:34    00:33:56

| Staff ID\Staff Name | | Activity | Rank | Position | Role |
|---|---|---|---|---|---|
| 03599 | SMITH, HENRY V | Fire At Scene | Captain | | |
| 11335 | GAITHER, TERRY B | Fire At Scene | Driver/Engi | | |
| 12228 | SHELTON, JONATHAN SCOTT | Fire At Scene | Roving Driv | | |

App'x Page 43

| 04701 | AL | 9 | 22 | 2010 | 12 | 10-0026882 | 000 | Responding Units/Personnel |
|--------|-----|-----|-----|--------|-----|-------------|------|---------------------------|
| FDID | State | Incident Date | | | Station | Incident Number | Exposure | |

| Unit | Notify Time | Enroute Time | Arrival Time | Cleared Time |
|------|-------------|--------------|--------------|--------------|
| E5B Engine 5B | 22:43:26 | 22:45:18 | 22:49:34 | 00:33:56 |

| Staff ID\Staff Name | | Activity | Rank | Position | Role |
|---------------------|---|----------|------|----------|------|
| 14763 | MILLS, JIMMY E | Fire At Scene | Firefighter | | |
| 14784 | EAKIN, TODD D | Fire At Scene | Firefighter | | |

| Unit | Notify Time | Enroute Time | Arrival Time | Cleared Time |
|------|-------------|--------------|--------------|--------------|
| L12 Ladder 12 | 22:42:02 | 22:44:33 | 22:46:05 | 00:31:18 |

| Staff ID\Staff Name | | Activity | Rank | Position | Role |
|---------------------|---|----------|------|----------|------|
| 09140 | GRAY, DENNIS P | Fire At Scene | Driver/Engi | | |
| 10846 | PHILLIPS, JASON B | Fire At Scene | Roving Driv | | |

| Unit | Notify Time | Enroute Time | Arrival Time | Cleared Time |
|------|-------------|--------------|--------------|--------------|
| SR15 Special Response 15 | 22:42:02 | 22:45:53 | 22:49:07 | 00:30:54 |

| Staff ID\Staff Name | | Activity | Rank | Position | Role |
|---------------------|---|----------|------|----------|------|
| 12230 | SUMMITT, SCOTT MICHAEL | Fire At Scene | Driver/Engi | | |
| 12936 | HILL, MATTHEW A | Fire At Scene | Roving Driv | | |

App'x Page 44

| 04701 | AL | MM 9 DD 22 YYYY 2010 | 12 | 10-0026882 | 000 | Responding Personnel |
|---|---|---|---|---|---|---|
| PDID * | State * | Incident Date * | Station | Incident Number * | Exposure * | |

| Staff ID\Staff Name | | Unit | Activity | Position | Rank | PayScl | Hrs | HrsPd | Pts |
|---|---|---|---|---|---|---|---|---|---|
| 07257 | MCFARLEN, HOWARD W | 102 | FX Fire At Scene | | DC | | 0.17 | 0.17 | 0.00 |
| 12234 | WILKERSON, DANIEL R | 120 | FX Fire At Scene | | FPI | | 0.26 | 0.26 | 0.00 |
| 09901 | LOVE, THERRON | 203 | FX Fire At Scene | | DTC | | 0.19 | 0.19 | 0.00 |
| 07649 | OLIVER, STEPHEN J | 204 | FX Fire At Scene | | DTC | | 0.03 | 0.03 | 0.00 |
| 03594 | KAY, JAMES M | 206 | FX Fire At Scene | | DTC | | 0.00 | 0.00 | 0.00 |
| 09900 | HELMS, TERRY N | E12 | FX Fire At Scene | | DR | | 1.78 | 1.78 | 0.00 |
| 10469 | DODSON, MICHAEL D | E12 | FX Fire At Scene | | CAPT | | 1.78 | 1.78 | 0.00 |
| 14194 | CRUMBLEY, PAUL | E12 | FX Fire At Scene | | FF | | 1.78 | 1.78 | 0.00 |
| 09378 | ROBINSON, MARTY L | E15 | FX Fire At Scene | | CAPT-R | | 1.94 | 1.94 | 0.00 |
| 11328 | PEARSON, AARON E | E15 | FX Fire At Scene | | DR-RV | | 1.94 | 1.94 | 0.00 |
| 13349 | MEDLEY, SEAN | E15 | FX Fire At Scene | | FF | | 1.94 | 1.94 | 0.00 |
| 13867 | MCMONIGLE, ROBERT W | E15 | FX Fire At Scene | | FF | | 1.94 | 1.94 | 0.00 |
| 14202 | BREWER, TYLER | E15 | FX Fire At Scene | | FF | | 1.94 | 1.94 | 0.00 |
| 06475 | ADCOCK, JOSEPH MARK | E16 | FX Fire At Scene | | DR | | 1.78 | 1.78 | 0.00 |
| 07312 | ATCHLEY, MICHAEL D | E16 | FX Fire At Scene | | CAPT | | 1.78 | 1.78 | 0.00 |
| 09150 | HORNBUCKLE, GARY L | E16 | FX Fire At Scene | | FF | | 1.78 | 1.78 | 0.00 |
| 14762 | MAPLES, BRIAN D | E16 | FX Fire At Scene | | FF | | 1.78 | 1.78 | 0.00 |
| 14781 | CLEMONS, SCOTT A | E16 | FX Fire At Scene | | FF | | 1.78 | 1.78 | 0.00 |
| 10470 | DRAKE, DENNIS E | E1A | FX Fire At Scene | | DR | | 0.57 | 0.57 | 0.00 |
| 10854 | WHITMAN, DAVID A | E1A | FX Fire At Scene | | CAPT-R | | 0.57 | 0.57 | 0.00 |
| 13481 | CASTEEL, KEITH A. | E1A | FX Fire At Scene | | FF | | 0.57 | 0.57 | 0.00 |
| 14776 | ANDREWS, CURTIS B | E1A | FX Fire At Scene | | FF | | 0.57 | 0.57 | 0.00 |
| 09141 | FRY, DAVID M | E1B | FX Fire At Scene | | CAPT | | 1.60 | 1.60 | 0.00 |
| 09667 | GRAVES, WILLIAM T | E1B | FX Fire At Scene | | DR | | 1.60 | 1.60 | 0.00 |
| 11321 | COCKRELL, JOHNNY L | E1B | FX Fire At Scene | | DR-RV | | 1.60 | 1.60 | 0.00 |
| 14192 | PFEIFFER, JACOB | E1B | FX Fire At Scene | | FF | | 1.60 | 1.60 | 0.00 |
| 14772 | REED, MICHAEL S | E1B | FX Fire At Scene | | FF | | 1.60 | 1.60 | 0.00 |
| 07666 | WALTERS, JAMES R | E5A | FX Fire At Scene | | DR | | 0.00 | 0.00 | 0.00 |
| 09905 | ROBINSON, DAVID T | E5A | FX Fire At Scene | | CAPT | | 0.00 | 0.00 | 0.00 |
| 13107 | COFFMAN, JAMES A. | E5A | FX Fire At Scene | | FF | | 0.00 | 0.00 | 0.00 |
| 13352 | LIMA, SANTIAGO | E5A | FX Fire At Scene | | FF | | 0.00 | 0.00 | 0.00 |
| 03599 | SMITH, HENRY V | E5B | FX Fire At Scene | | CAPT | | 1.95 | 1.95 | 0.00 |
| 11335 | GAITHER, TERRY B | E5B | FX Fire At Scene | | DR | | 1.95 | 1.95 | 0.00 |
| 12228 | SHELTON, JONATHAN | E5B | FX Fire At Scene | | DR-RV | | 1.95 | 1.95 | 0.00 |
| 14763 | MILLS, JIMMY E | E5B | FX Fire At Scene | | FF | | 1.95 | 1.95 | 0.00 |
| 14784 | EAKIN, TODD D | E5B | FX Fire At Scene | | FF | | 1.95 | 1.95 | 0.00 |
| 09140 | GRAY, DENNIS P | L12 | FX Fire At Scene | | DR | | 1.89 | 1.89 | 0.00 |
| 10846 | PHILLIPS, JASON B | L12 | FX Fire At Scene | | DR-RV | | 1.89 | 1.89 | 0.00 |
| 12230 | SUMMITT, SCOTT | SR15 | FX Fire At Scene | | DR | | 2.15 | 2.15 | 0.00 |
| 12936 | HILL, MATTHEW A | SR15 | FX Fire At Scene | | DR-RV | | 2.15 | 2.15 | 0.00 |

Total Participants: 40                                      Total Personnel Hours:  52.70


      An 'X' next to the unit denotes driver.

COH/AL                                                    04701    09/22/2010    10-0026882

App'x Page 45

**A**

| | MM | DD | YYYY | | | |
|---|---|---|---|---|---|---|
| 04701 | AL | 9 | 22 | 2010 | 12 | 10-0026882 | 000 |
| FDID * | State * | Incident Date * | | | Station | Incident Number * | Exposure * |

☐ Delete  ☐ Change

NFIRS - 11
Arson

**B  Agency Referred To** ☐ None

Street Address _____

Their Case Number _____

Agency Name _____

City _____

Their ORI _____

Agency Phone Number _____

State __ Zip Code __ - __

Their Federal Identifier (FID) _____  Their FDID _____

**C  Case Status**

1 ☐ Investigation open
2 ☒ Investigation closed
3 ☐ Investigation inactive
4 ☐ Closed with arrest
5 ☐ Closed with exceptional clearance

**D  Availability of Material First Ignited**

1 ☐ Transport to scene
2 ☐ Available at scene
U ☐ Unknown

**E  Suspected Motivation Factors**     Check up to three factors

| | | | | | |
|---|---|---|---|---|---|
| 11 ☐ Extortion | 22 ☐ Hate crime | 42 ☐ Vanity/recognition | 54 ☐ Burglary |
| 12 ☐ Labor unrest | 23 ☐ Institutional | 43 ☐ Thrills | 61 ☐ Homicide concealment |
| 13 ☐ Insurance fraud | 24 ☐ Societal | 44 ☐ Attention/sympathy | 62 ☐ Burglary concealment |
| 14 ☐ Intimidation | 31 ☐ Protest | 45 ☐ Sexual excitement | 63 ☐ Auto theft concealment |
| 15 ☐ Void contract/lease | 32 ☐ Civil unrest | 51 ☐ Homicide | 64 ☐ Destroy records/evidence |
| 21 ☐ Personal | 41 ☐ Fireplay/curiosity | 52 ☐ Suicide | 00 ☐ Other motivation |
| | | 53 ☐ Domestic violence | UU ☐ Unknown motivation |

**F  Apparent Group Involvement**
Check up to three factors

1 ☐ Terrorist group
2 ☐ Gang
3 ☐ Anti-government group
4 ☐ Outlaw motorcycle organization
5 ☐ Organized crime
6 ☐ Racial/ethnic hate group
7 ☐ Religious hate group
8 ☐ Sexual preference hate group
0 ☐ Other group
N ☐ No Group involvement, acted alone
U ☐ Unknown

**H  Incendiary Devices**     Select one from each category

**CONTAINER**     NN ☐ None

| | | |
|---|---|---|
| 11 ☐ Bottle (Glass) | 14 ☐ Pressurized Container | 17 ☐ Box |
| 12 ☐ Bottle (Plastic) | 15 ☐ Can | 00 ☐ Other Container |
| 13 ☐ Jug | 16 ☐ Gasoline or fuel can | UU ☐ Unknown |

**IGNITION/DELAY DEVICE**     NN ☐ None

| | | |
|---|---|---|
| 11 ☐ Wick or Fuse | 17 ☐ Road flare/fuse | |
| 12 ☐ Candle | 18 ☐ Chemical Component | |
| 13 ☐ Cigarette & Matchbook | 19 ☐ Trailer/Streamer | |
| 14 ☐ Electronic Component | 20 ☐ Open flame source | |
| 15 ☐ Mechanical Device | 00 ☐ Other delay device | |
| 16 ☐ Remote Control | UU ☐ Unknown | |

**G₁  Entry Method**

Entry Method _____

**G₂  Extent of Fire Involvement on Arrival**

Extent of Fire Involvement _____

**FUEL**     NN ☐ None

| | | |
|---|---|---|
| 11 ☐ Ordinary Combustibles | 16 ☐ Pyrotechnic material | |
| 12 ☐ Flammable gas | 17 ☐ Explosive material | |
| 14 ☐ Ignitable liquid | 00 ☐ Other material | |
| 15 ☐ Ignitable solid | UU ☐ Unknown | |

**I  Other Investigative Information**
Check all that apply

1 ☐ Code violations
2 ☐ Structure for sale
3 ☐ Structure vacant
4 ☐ Other crimes involved
5 ☐ Illicit drug activity
6 ☐ Change in insurance
7 ☐ Financial problem
8 ☐ Criminal/Civil actions pending

**J  Property Ownership**

1 ☒ Private
2 ☐ City,town,village,local
3 ☐ County or parish
4 ☐ State or province
5 ☐ Federal
6 ☐ Foreign
7 ☐ Military
0 ☐ Other

**K  Initial Observations**
Check all that apply

1 ☐ Windows ajar
2 ☐ Doors ajar
3 ☐ Doors locked
4 ☒ Doors unlocked
5 ☐ Fire department forced entry
6 ☐ Forced entry prior to FD arrival
7 ☐ Security system activated
8 ☐ Security present,(didn't activate)

**L  Laboratory Used**     Check all that apply

1 ☐ Local
2 ☐ State
3 ☐ ATF
4 ☐ FBI
5 ☐ Other Federal
6 ☐ Private
N ☐ None

NFIRS-11 Revision 11/17/98

| | MM DD YYYY | | | | |
|---|---|---|---|---|---|
| 04701 | AL | 9 22 2010 | 12 | 10-0026882 | 0 |
| FDID * | State * | Incident Date * | Station | Incident Number * | Exposure * |

Arson Narrative

**Arson Narrative:**
I was requested on scene by District Chief Kay. When I arrived on scene, I was told that there had been a fire.

During my exterior examination, I noted a hotel building that had fire damage to the one balcony on the second floor 2207 and two balconies on the third floor 2307 and 2309. The building had been evacuated.

During my interior examination, I noted heavy fire/smoke/heat damage to a room on the third floor 2307 that extended to the attic. In the second floor apartment 2207, there was a pack of cigarettes and a lighter on the tv table just inside the door. I requested Electrical Inspector Doug Smith. See Doug Smith's report. Building Inspector Skip Stinson, also, responded to the scene per Doug Smith's request. Due to the fire damage Doug Smith and Skip Stinson stated that the building was unsafe to occupy.

I interviewed the occupant of room 2207, Michal Siegling.

In conclusion, the point of origin was on the second floor balcony. The cause of the fire was careless use of smoking materials.


10/05/2010 12:42:22 PM DRW

COH/AL                                            04701      09/22/2010    10-0026882

| A | | | MM | DD | YYYY | | | | NFIRS - 11 |
|---|---|---|---|---|---|---|---|---|---|
| 04701 | AL | | 9 | 22 | 2010 | | 12 | 10-0026882 | 00000 | Juvenile Firesetter |

FDID ★   State ★   Incident Date ★   Station   Incident Number ★   Exposure★   ☐ Delete   ☐ Change

**M2** Age or Date of Birth

Complete this section if the person involved in the ignition of the fire was a child or Juvenile under the age of 18

Age (in years) _____ OR

Month ___ Day ___ Year ___

**M4** Race

1 ☐ White
2 ☐ Black
3 ☐ Am. Indian, Eskimo
4 ☐ Asian
0 ☐ Other, multi-racial
U ☐ Undetermined

**M6** Family Type

1 ☐ Single parent
2 ☐ Foster parent(s)
3 ☐ Two parent family
4 ☐ Extended family
N ☐ No family unit
0 ☐ Other family type
U ☐ Unknown

**M1** Subject Number

|_____1|
Subject Number

**M3** Gender

1 ☐ Male   2 ☐ Female

**M5** Ethnicity

1 ☐ Hispanic

**M7** Motivation/Risk Factors Check only one of codes 1-3 and then all other that apply

1 ☐ Mild curiousity about fire
2 ☐ Moderate curiousity about fire
3 ☐ Extreme curiousity about fire

4 ☐ Diagnosed (or suspected) ADD/ADHD
5 ☐ History of trouble outside school
6 ☐ History of stealing or shoplifting
7 ☐ History of physically assulting others
8 ☐ History of firoplay or firesetting
9 ☐ Transiency
0 ☐ Other
U ☐ Unknown

**M8** Disposition of Person Under 18

1 ☐ Handled within department
2 ☐ Released to parent/guardian
3 ☐ Referred to other authority
4 ☐ Referred to treatment program
5 ☐ Arrested, charged as adult
6 ☐ Referred to firesetter intervention program
0 ☐ Other
U ☐ Unknown

**N** Remarks (local use)

COH/AL

04701    09/22/2010    10-0026882

App'x Page 48

**A**

| 04701 | AL | MM 9 | DD 22 | YYYY 2010 | 12 | 10-0026882 | 00000 | ☐ Delete |
|---|---|---|---|---|---|---|---|---|
| FDID ✱ | State ✱ | Incident Date ✱ | | | Station | Incident Number ✱ | Exposure✱ | ☐ Change |

Arson Involvement

**Name**

Last: Siegling

First: Michael

Middle:

Alias:

**M2 Age or Date of Birth**

Age (in years) ___ OR ___

Month | Day | Year

**M4 Race**

- 1 ☐ White
- 2 ☐ Black
- 3 ☐ Am. Indian, Eskimo
- 4 ☐ Asian
- 0 ☐ Other, multi-racial
- U ☐ Undetermined

**M6 Family Type**

- 1 ☐ Single parent
- 2 ☐ Foster parent(s)
- 3 ☐ Two parent family
- 4 ☐ Extended family
- N ☐ No family unit
- 0 ☐ Other family type
- U ☐ Unknown

**M1 Subject Number**

Subject Number: 1

**M3 Gender**

1 ☐ Male    2 ☐ Female

**M5 Ethnicity**

1 ☐ Hispanic

**M7 Motivation/Risk Factors** Check only one of codes 1-3 and then all other that apply

- 1 ☐ Mild curiosity about fire
- 2 ☐ Moderate curiosity about fire
- 3 ☐ Extreme curiousity about fire

- 4 ☐ Diagnosed (or suspected) ADD/ADHD
- 5 ☐ History of trouble outside school
- 6 ☐ History of stealing or shoplifting
- 7 ☐ History of physically assulting others
- 8 ☐ History of fireplay or firesetting
- 9 ☐ Transiency
- 0 ☐ Other
- U ☐ Unknown

**M8 Disposition of Person Under 18**

- 1 ☐ Handled within department
- 2 ☐ Released to parent/guardian
- 3 ☐ Referred to other authority
- 4 ☐ Referred to treatment program
- 5 ☐ Arrested, charged as adult
- 6 ☐ Referred to firesetter intervention program
- 0 ☐ Other
- U ☐ Unknown

**Additional Information**

Social Security Number ___

Weight ___ - ___ Weight

Marital Status | Arrests | Convictions

**Hair Color**

- ☐ Bald
- ☐ Black
- ☐ Blonde
- ☐ Brown
- ☐ Gray
- ☐ Red
- ☐ White

**Eye Color**

- ☐ Black
- ☐ Blue
- ☐ Brown
- ☐ Green
- ☐ Gray
- ☐ Hazel
- ☐ Pink

**Arrested**

Month | Day | Year

**Convicted**

Month | Day | Year

**N   Remarks (local use)**

App'x Page 49

| 04701 | AL | MM 9 | DD 22 | YYYY 2010 | 12 | 10-0026882 | 000 | NFIRS - Involvement User Fields |
|---|---|---|---|---|---|---|---|---|
| FDID | State | Incident Date | | | Station | Incident Number | Exposure | |

| Involvement Name: | Involvement Type: | | Owner: | Occupant: |
|---|---|---|---|---|
| Siegling, Michael | Occupant | | | X |

| 04701 | AL | MM 9 | DD 22 | YYYY 2010 | 12 | 10-0026882 | 000 | Completion Status |
|---|---|---|---|---|---|---|---|---|
| FDID * | State * | Incident Date | | * | Station | Incident Number * | Exposure * | |

Completion Status:
Structure fire report is required and incomplete.

COH/AL

04701    09/22/2010    10-0026882

App'x Page 51

| | | MM DD YYYY | | | | | Completion Status |
|---|---|---|---|---|---|---|---|
| 04701 | AL | 9 22 2010 | 12 | 10-0026882 | 000 | | |
| FDID * | State * | Incident Date * | Station | Incident Number * | Exposure * | | |

**Completion Status:**

Structure fire report is required and incomplete.

COH/AL                                                04701      09/22/2010      10-0026882

9-23-10

My name is Wanda Morgan, I work at the Country Inn & Suites, 4880 University Drive. On September 22 around 10:30 PM there was a fire.

Don Wilkerson was on site from the Huntsville Fire Marshal's office.

Thursday morning I received a phone call from Mike La Grange - who stated he was with the Huntsville Fire Marshal's office. I asked about Mr. Wilkerson - he stated he had taken the shift over - since Mr. Wilkerson had worked all night. He asked about the owner and requested specific information. I told him I would not be able to provide.

the things he needed were
① Broker who wrote policy
② Carrier
③ Direct number - of the owner -
I spoke to Srnidth yedla (owner's son) he advised me to contact Tony Brown - the CPA for the hotel.
I called Tony Brown and emailed him the 3 items requested. My understanding is that Tony Brown did in fact call Mr. La Grange.

Around 3pm Don Wilkerson Huntsville
Fire Marshall office - came to look
at the building.
   When I asked about Mike LeGrange-
he said he did not know that person.
I gave Inspector Wilkerson the phone
number 678-615-7705. When I
asked why not a 256 number - he said
this is my sattelite number and
you will always be able to reach me-

   We called the number and mike
answered. We asked what office are you
with? His answer was Huntsville
Fire marshall, at that time Mr.
Wilkerson took the phone and began
to ask questions - During this
conversation - the person (Mike LeGrange
hung the phone up)

Wanda Morgan
September 23, 2010
410-322-2394 Cell
256-837-4070- Busi

EPt
Swearyton

22 SEP 2010

I MICHAEL K. SIEGLING WAS AWAKEN BY A
FIRE ALARM AT THE HOTEL AT APPROXIMATELY 10:40 PM.
I WENT TO THE HALLWAY AND DID NOT SMELL SMOKE
NOR SEE ANYONE VACATING THE BUILDING. APPROXIMATELY
FIVE MINUTES LATER, ANOTHER HOTEL GUEST KNOCKED
ON MY DOOR AND INFORMED ME THERE WAS A
FIRE IN OUR BUILDING. I THEN OPENED MY
BALCONY DOOR, LOOKED TO THE LEFT AND OBSERVED
FLAME TO THE LEFT OF MY BALCONY. END OF
STATEMENT.

Statement taken by David Wilkerson

Q When was the last time that you smoked cigarettes on the balcony?

A. I don't remember (yesterday or day before yesterday)

Q How did you extinguish the cigarettes when you were done?

A. Styrofoam cup with water

Q Before the fire, when was the last time you was on the balcony?

A. Around 5 or 6 today

Q What was on the balcony when you was last on the balcony?

A. Beer Can

Michael Siegling
180 Grand Avenue
Oakland, CA 94612
(510) 251-4022

Statement taken by Daniel Wilkerson

FILED
2013 Aug-29  PM 04:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## <u>NORTHEASTERN DIVISION</u>

|  |  |
|---|---|
| ACADIA INSURANCE CO., | |
| Plaintiff, | |
| v. | CIVIL ACTION NO. 5:13-CV-00895-CLS |
| UNITED STATES OF AMERICA AND MICHAEL SIEGLING, | |
| Defendants. | |

## <u>DEFENDANT UNITED STATES' ANSWER TO</u>
## <u>PLAINTIFF'S ORIGINAL COMPLAINT (DOC. 1)</u>

COMES NOW the Defendant United States of America, by and through Joyce White Vance, United States Attorney for the Northern District of Alabama, and Jack Hood, Assistant U.S. Attorney, and files Defendant United States' Answer to Plaintiff's Original Complaint (Doc. 1), as follows:

FIRST DEFENSE

The court lacks subject matter jurisdiction over all or part of Plaintiff's Original Complaint. 28 U.S.C. §§ 1346(b)(1) and 2671- 2680.

SECOND DEFENSE

Plaintiff's Original Complaint, in whole or in part, fails to state a claim upon which relief can be granted.

<u>THIRD DEFENSE</u>

Defendant United States answers the specific allegations contained in the numbered paragraphs of the Plaintiff's Original Complaint as follows:

I. Parties

1.

Defendant United States is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 1 of Plaintiff's Original Complaint and therefore denies the same.

2.

Defendant United States admits the allegations in paragraph 2 of Plaintiff's Original Complaint.

3.

Defendant United States admits that Defendant Siegling resides in the State of California but is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 1 of Plaintiff's Original Complaint and therefore denies the same.

II. Jurisdiction and Venue

4.

Defendant United States admits that Plaintiff has brought what purports to

2

be an action pursuant to the Federal Tort Claims Act (FTCA), pursuant to 28

U.S.C. § 1346(b), etc., and that the FBI is an agency of the United States; however,

the Defendant United States denies the remaining allegations contained in

paragraph 4 of Plaintiff's Original Complaint to the effect that Defendant Michael

Siegling was acting within the line and scope of his federal employment at times

relevant to Plaintiff's claims.

5.

Defendant United States admits the allegations in paragraph 5 of Plaintiff's

Original Complaint.

### III. Conditions Precedent

6.

Defendant United States admits that an SF-95 was received by the FBI but is

without knowledge or information sufficient to form a belief as to the truth of the

allegations about any other conditions precedent contained in paragraph 6 of

Plaintiff's Original Complaint and therefore denies the same.

7.

Defendant United States admits the allegations contained in paragraph 7 of

Plaintiff's Original Complaint.

### IV. Background Facts

8.

3

Defendant United States denies the allegations contained in paragraph 8 of Plaintiff's Original Complaint to the extent that Plaintiff claims that Defendant Michael Siegling was acting within the line and scope of his federal employment at times relevant to Plaintiff's claims; as to the remaining allegations, is without knowledge or information sufficient to form a belief as to the truth of these allegations contained in paragraph 8 of Plaintiff's Original Complaint and therefore denies the same.

9.

Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 9 of Plaintiff's Original Complaint and therefore denies the same.

10.

Defendant United States admits that in September 2010, Defendant Michael Siegling was an agent of the FBI, that the FBI was an agency of the United States, and that Defendant Michael Siegling was during the general time frame attending a training program; however, Defendant Michael Siegling was not acting within the line and scope of his federal employment at times relevant to Plaintiff's claims, and therefore, these allegations are denied.

11.

App'x Page 61

Defendant United States is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 11 of Plaintiff's Original Complaint and therefore denies the same.

12.

Defendant United States is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 12 of Plaintiff's Original Complaint and therefore denies the same.

13.

Defendant United States denies the allegations contained in paragraph 13 of Plaintiff's Original Complaint to the extent that it is alleged that Defendant Michael Siegling was acting within the line and scope of his federal employment at times relevant to Plaintiff's claims; as to the remaining allegations in paragraph 13, the Defendant United States is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 13 of Plaintiff's Original Complaint and therefore denies the same.

14.

Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 14 of Plaintiff's Original Complaint and therefore denies the same.

V. Causes of Action

5

15.

Defendant United States incorporates by reference its answers to the foregoing paragraphs 1 through 14 with the same force and effect as if fully set out herein.

16.

Defendant United States is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 16 of Plaintiff's Original Complaint and therefore denies the same.

Count One: Negligence

17.

Defendant United States denies the allegations contained in paragraph 17 of Plaintiff's Original Complaint.

18.

Defendant United States denies the allegations contained in paragraph 18 of Plaintiff's Original Complaint.

19.

Defendant United States denies the allegations contained in paragraph 19 of Plaintiff's Original Complaint.

20.

Defendant United States denies the allegations contained in paragraph 20 of Plaintiff's Original Complaint.

## VI. Damages

### 21.

Defendant United States is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 21 of Plaintiff's Original Complaint and therefore denies the same.

## VII. Jury Demand

### 22.

Defendant United States denies the allegations contained in paragraph 22 of Plaintiff's Original Complaint because pursuant to 28 U.S.C. § 2402, Plaintiff is not entitled to a jury trial against the Defendant United States in an FTCA action.

## VII Reservations

### 23.

Defendant United States denies the allegations contained in paragraph 23 of Plaintiff's Original Complaint because any additional causes of action against the Defendant United States are governed by the FTCA, the Federal Rules of Civil Procedure, the Local Rules, and the Scheduling Orders of the Court.

## IX. Conclusion & Prayer

To the extent Plaintiff has made a prayer for relief, no response is required.

Defendant United States denies each and every allegation contained in Plaintiff's Original Complaint not herein above admitted, controverted, or specifically denied.

<u>FOURTH DEFENSE</u>

The Defendant violated no actionable duty owed to Plaintiff.

<u>FIFTH DEFENSE</u>

No act or omission by the Defendant's employees proximately caused harm or damage to the Plaintiff.

<u>SIXTH DEFENSE</u>

Pursuant to 28 U.S.C. § 2675(b), Plaintiff's recovery, if any, is limited to the amount sought by Plaintiff administratively, and the two-year federal statute of limitations contained in 28 U.S.C. §§ 2401(b); 2675(a) and 28 C.F.R. § 543.30 *et seq.*, may bar all or part of Plaintiff's claims that were not contained in the one SF-95 received by the federal agency (FBI).   (Plaintiff's claim against Defendant Michael Siegling is non-meritorious because it is untimely as a matter of Alabama law due to the two-year statute of limitations contained in Ala. Code § 6-2-38(q) (Supp. 2011) with the fire and damage occurring on September 23, 2010 and suit not being filed until May 10, 2013, well beyond the two-years allowed.)

<u>SEVENTH DEFENSE</u>

Contributory negligence may bar Plaintiff's claims.

## EIGHTH DEFENSE

Pursuant to 28 U.S.C. § 2674, to the extent that Plaintiff claims punitive damages, the Court is without subject matter jurisdiction, and such claims are barred by sovereign immunity.

## NINTH DEFENSE

Pursuant to 28 U.S.C. § 2402, Plaintiff is not entitled to a jury trial against the United States in an FTCA action.

## TENTH DEFENSE

To the extent that Plaintiff may be found to have sustained any injuries or damages, those alleged injuries or damages were proximately caused by the intervening, joint, and/or superseding acts and/or omissions of persons or entities other than an employee or agency of the United States and were not caused by any acts and/or omission of any employee or entity of the United States.

## ELEVENTH DEFENSE

Alabama's modified collateral source rule may apply to some of Plaintiff's claims for damages pursuant to *Marsh v. Green*, 782 So. 2d 223 (Ala. 2000) (tort reform statute abolishing collateral source rule did not violate right to jury trial provision of the Alabama Constitution of 1901 or equal protection clause, *overruling American Legion Post No. 57 v. Leahey*, 681 So. 2d 1337 (Ala. 1996), which had previously held the statute unconstitutional on those grounds).

9

TWELFTH DEFENSE

Plaintiff has failed to mitigate damages as required by law.

THIRTEENTH DEFENSE

To the extent the law (common or statutory law) of Alabama, where the alleged acts or omissions occurred, limits damages or limits the Defendant's liability or Plaintiff's cause of action, that law applies to this action against the United States to the extent that it is not inconsistent with the Federal Torts Claims Act.

FOURTEENTH DEFENSE

Pursuant to 28 U.S.C. § 2674, Plaintiff is not entitled to recovery of pre-judgment interest on any award he may obtain from the United States.

FIFTEENTH DEFENSE

In the event the court finds the United States liable and enters a monetary judgment against the United States, Plaintiff is entitled to post-judgment interest only to the extent provided by law.

SIXTEENTH DEFENSE

To the extent Plaintiff claims equitable relief the Defendant United States, the court is without subject matter jurisdiction in an FTCA action.

SEVENTEENTH DEFENSE

Defendant United States asserts that the Defendant Michael Siegling was not

App'x Page 67

acting within the line and scope of his federal employment at the times relevant to plaintiff's allegations, and therefore, the court lacks subject matter jurisdiction.

WHEREFORE, Defendant United States prays that judgment be entered in its favor, that all costs be assessed against the Plaintiff, and that the Court grant such other and further relief it deems just and proper.

Respectfully submitted,

JOYCE WHITE VANCE
UNITED STATES ATTORNEY

**s/ Jack Hood**
Jack Hood
Assistant United States Attorney
Attorney for Defendant United States
U.S. Attorney's Office
State Bar No. D41J
1801 Fourth Avenue North
Birmingham, Alabama 35203
(205) 244-2103
(205) 244-2181 (fax)
jack.hood@usdoj.gov

Of Counsel:

Jayme Kantor, Esq.
Assistant General Counsel
Attorney for Defendant United States
Federal Bureau of Investigation
935 Pennsylvania Avenue, NW
Suite 10140
Washington, DC 20535
Phone: 202/324-7194
Email: Jayme.Kantor@ic.fbi.gov

11

App'x Page 68

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on <u>August 29, 2013</u>, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF system and mailed a copy by U.S Mail,

first class postage paid, and was further sent via Federal Express to:

> Carl L. Evans, Esq.
> Attorney for Plaintiff
> McCathern, P.L.L.C.
> Regency Plaza
> 3710 Rawlins Street
> Suite 1600
> Dallas, TX 75219
> Phone: 214/741-2662
> Facsimile: 214/741-4717
> Email: cevans@mccathernlaw.com

> <u>**s/ Jack Hood**</u>
> Jack Hood
> Assistant United States Attorney

App'x Page 69

FILED

2013 Dec-23  PM 02:37
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## OF THE NORTHERN DISTRICT OF ALABAMA
## HUNTSVILLE DIVISION

| | | |
|---|---|---|
| **ACADIA INSURANCE CO., AS SUBROGEE OF YEDLA MANAGEMENT CO., INC. & HOSPITALITY ENTERPRISES OF HUNTSVILLE, INC. D/B/A COUNTRY INN & SUITES** <br> *Plaintiff,* <br><br> **v.** <br><br> **UNITED STATES OF AMERICA** <br> *Defendant.* | § § § § § § § § § § § | **Cause No.: 5:13-cv-00895-CLS** |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF THE COURT:

Plaintiff Acadia Insurance Co., as subrogee of Yedla Management Co., Inc., files its First Amended Complaint against Defendant, the United States of America, and in support thereof would respectfully show the Court as follows:

### I. PARTIES

1. Plaintiff Acadia Insurance Co., as Subrogee of Yedla Management Co., Inc. and Hospitality Enterprises of Huntsville, Inc. d/b/a Country Inn & Suites, is an insurance company authorized to write policies and conduct business in the State of Alabama; Yedla Management Co., Inc. is an Alabama corporation.

2. The United States of America may be served by delivering a copy of summons and of the complaint to the United States Attorney for the Northern District of Alabama, Joyce White Vance, at United States Attorney's Office for the Northern District of Alabama, **Huntsville Office,** 400 Meridian Street, Suite 304, Huntsville, Alabama, 35801; and by delivering a copy of

App'x Page 70

the summons and of the complaint to the Attorney General of the United States, Eric J. Holder, Jr., at Office of the Attorney General of the United States, Department of Justice, Room B103, 950 Pennsylvania Avenue, NW, Washington, D.C., 20530-0001; and to the Federal Bureau of Investigations (FBI) at the following address: Federal Bureau of Investigation Headquarters, 935 Pennsylvania Avenue, NW, Washington, D.C. 20535.

## II. JURISDICTION & VENUE

4.  The court has jurisdiction over this lawsuit under 28 U.S.C. § 1346(b) because the suit involves a claim against the United States for property damage caused the negligent acts and/or omissions of a government employee, Michael Siegling, while acting within the scope of his or her employment with the Federal Bureau of Investigation (FBI).  The FBI is an agency of the United States of America.  During the time of the incident described in Section IV below, Mr. Siegling was in the course and scope of his employment with the FBI conducting a six-week training program for disarming explosive devices.

5. Venue is proper in this Court pursuant to 28 § 1402(b) and 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, in Huntsville, Alabama, which is in the Huntsville Division of the Northern District of Alabama.

## III. CONDITIONS PRECEDENT

6.  All conditions precedent to the filing of Plaintiff's Original Complaint have occurred pursuant to 28 U.S.C. § 2401(a) & (b).

7.  On August 1, 2012, Plaintiff timely presented this claim in writing to the Federal Bureau of Investigation (FBI) by sending a Standard Form 95 Claim for Damage, Injury, or Death Pursuant to 28 U.S.C. § 2675 and 28 C.F.R. §§ 14.2 – 14.3, and correspondence with additional

documentation, in satisfaction of the jurisdictional prerequisites of 28 U.S.C. § 2401(a) & (b) (stating that plaintiff must present claim to appropriate federal agency within two (2) years of the incident made the basis of the complaint). *See* Exhibit A, Standard 95 Claim Form & August 1, 2011 correspondence with exhibits omitted, attached. To date, no response has been received. As such, the demand has been denied pursuant to 28 U.S.C. § 2675(a) (holding that "[t]he failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section."). As such, Plaintiff now properly brings forth his claims in federal court pursuant to 28 U.S.C. § 2401(a) & (b) (within six months of the appropriate federal agency failing to make a final disposition of claim).

## IV. BACKGROUND FACTS

8.   While in the course and scope of his employment with the Federal Bureau of Investigation (FBI), Michael Siegling negligently discarded a cigarette in his hotel room causing a fire that resulted in massive property damage to the Country Inn and Suites located at 4880 University Drive, Huntsville, Alabama, 35816 on September 23, 2010.

9. Yedla Management Co., Inc. is an Alabama corporation that invests in hotel chains. Dr. K.R. Yedla, the founder and namesake of Yedla Management, emigrated from India to the United States in the 1950s and pursued his dreams to establish a successful hotel investment corporation. Yedla Management and Hospitality Enterprises, Inc. d/b/a Country Inn & Suites own and manage several hotels throughout the country, including the subject hotel, the Country Inn and Suites located at 4880 University Drive, Huntsville, Alabama, 35816. Many of the Country Inn and Suites' guests are federal employees because of the motel's location and proximity to Redstone Arsenal, a United States Army base.

10. In September of 2010, Michael Siegling was an agent with the FBI. The FBI is an agency of the United States of America. At the time of the subject incident, Mr. Siegling was in the course and scope of his employment with the FBI conducting a six-week training program for disarming explosive devices.

11.  At the time of the incident, Michael Siegling was a resident of Room 2207 at the subject Country Inn & Suites.  Upon information and belief, the FBI paid for and reserved Room 2207. The subject Country Inn & Suites is an upscale motel and actually consists of three (3) separate buildings and 170 individual rooms.

12.  On the date of the incident, September 23, 2010 at approximately 10:30 p.m., a fire started on the balcony of Room 2207 (Mr. Siegling's room).  *See* Exhibit B, Huntsville Fire Marshal Report, attached. The origin of the fire, Room 2207, was located in Building 2.  *See* Exhibit B, attached.  As a result of the fire, Building 2 sustained substantial structural damage as well as smoke and water damage throughout the building. The fire burned upward through two floors and gained access to the attic, severely damaging the truss roof.  *See* Exhibits B, attached. Approximately 40 to 50 feet of the roof structure was severely charred and required replacement. Additionally, Building 3 sustained damage to the vinyl siding as a result of the fire.  Furniture and business personal property located within the motel rooms were extensively damaged due to the fire.  Mattresses present within the rooms were lost due to odor, and upholstered furniture sustained severe damage due to smoke and water.

 13.  Mr. Siegling admitted to smoking in Room 2207.  *See* Exhibit B, attached.  Siegling carelessly discarded a cigarette in his room while in the course and scope of his employment with the FBI; this careless and reckless act caused a severe fire that destroyed almost the entirety of Building 2 and business personal property in the adjacent hotel buildings. The Huntsville Fire

Marshal's investigation of Room 2207 revealed a pack of Marlboro cigarettes and a lighter present within the room.  *See* Exhibit B, attached.  Importantly, the Huntsville Fire Marshal, after thoroughly examining the burn patterns and other relevant facts, concluded that the fire was caused due to the careless discarding of a cigarette.  *See* Exhibit B, attached.  Upon information and belief, Michael Siegling was the only occupant of Room 2207 at the time of the fire.

14.   At all times relevant to the present lawsuit, Plaintiff Acadia Insurance Company Insured Yedla Management Company, Inc. and Hospitality Enterprises of Huntsville, Inc. d/b/a Country Inn & Suites against damages to the subject Country Inn & Suites for both real and personal property as well as loss of profits.   Therefore, under its insurance contract with Yedla Management Company, Inc. and Hospitality Enterprises of Huntsville, Inc. d/b/a Country Inn & Suites and Alabama law, Plaintiff Acadia Insurance Company is entitled to recover the One Million One Hundred Nineteen Thousand Eight Hundred Seventy-Two Dollars & Ninety-Three Cents ($1,119,536.93) in damages it has paid as a result of the loss caused by the negligence of Defendant.

App'x Page 74

## V. CAUSES OF ACTION

### *Liability Pursuant to Federal Tort Claims Act – FBI*

15.  Plaintiff incorporates by reference the factual allegations contained in the preceding paragraphs.

16.  All conditions precedent to the jurisdictional prerequisites necessary to assert the liability of Defendant under the facts of this matter have occurred or have been performed by Plaintiff.

<u>Count One: Negligence</u>

17.  On the date of the incident and at all times relevant to this matter, Michael Siegling was an agent of the FBI and was in the course and scope of his employment as an agent of the FBI.  *See* 28 U.S.C. § 2671; *see also Singleton v. Burchfield*, 362 F. Supp.2d 1291 (M.D. Ala. 2005) (holding that an Air Force employee who received a temporary duty assignment to attend a five-week "leadership school" in Alabama who was authorized use of a Department of Defense vehicle to travel from the training school to various places in town, and where the employee took the vehicle to a restaurant for dinner and the employee was involved in an accident with a civilian, that the employee **was acting within the scope of his employment**, and reasoned that the employee was engaged in actions during his training period that conferred a benefit on his employer, and that his conduct was not "impelled by motives that are wholly personal.").

18.  The United States of America is liable to Plaintiff Acadia Insurance Co., as subrogee of Yedla Management Co., Inc., on the legal doctrine of *respondeat superior* for the breach of the duty of care by the employees, independent contractors, or agents of Defendant FBI because the acts of such persons were performed while in the employment of Defendant, to further Defendant's business, and to accomplish the objective for which the employee, independent contractor, or agent was hired.

App'x Page 75

19.  As described herein, Defendant FBI, itself and through the actions of its employee, Michael Siegling, was negligent on the occasion in question including but not limited to:

  a.  Failing to properly discard a lit cigarette;
  b.  Failing to insure that cigarette was properly extinguished, creating a dangerous condition;
  c.  Failing to train, instruct and/or otherwise require its employees to safely discard or extinguish a cigarette properly; and
  d.  Otherwise failing to use due care under the circumstances.

20.  This negligence, based on the actions of the FBI and Michael Siegling, was the proximate cause of Plaintiff's injuries.

21.     Pleading further, and in the alternative, the FBI and Michael Siegling were in control of the instruments which caused Plaintiff's injuries, Plaintiff's harm ordinarily would not occur unless someone was negligence, and the evidence eliminates other causes of Plaintiff's harm, including the conduct of Plaintiff or third persons. Plaintiff, therefore, may prove its claims by invocation of the doctrine of *res ipsa loquitur*.

## VI. DAMAGES

22.  In total, Plaintiff has incurred One Million One Hundred Nineteen Thousand Eight Hundred Seventy-Two Dollars & Ninety-Three Cents ($1,119,536.93) in order to repair the extensive fire, water, and smoke damage to the subject property, along with business interruption loss due to Defendant FBI and Mr. Siegling's negligence.   *See* Exhibit A, Standard Form 95 Claim for Damage, Injury, or Death.  Repairs to the subject motel took approximately one (1) year.

## VII.  JURY DEMAND

23.     Plaintiff hereby demands a jury trial on all ultimate fact issues in accordance with Federal law and tenders the appropriate fee with this petition.

## VIII.  RESERVATIONS

**PLAINTIFF'S FIRST AMENDED COMPLAINT**                                                                      **PAGE 7**
L:\00760\0064 (Yedla)\Pleadings\Drafts\Plaintiff's First Amended Complaint.docx

App'x Page 76

24.    Plaintiff reserves the right to bring additional causes of action against Defendant and to amend this Complaint as necessary.

### IX.  CONCLUSION & PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff Acadia Insurance Co., as subrogee of Yedla Management Co., Inc. and Hospitality Enterprises of Huntsville, Inc. d/b/a Country Inn & Suites, respectfully requests that Plaintiff recover all relief requested herein and for such other and further relief, both at law and in equity, to which the Plaintiff may be justly and legally entitled.

Respectfully submitted,

**MCCATHERN, P.L.L.C**

By:   /s/ *Carl L. Evans*
        Carl L. Evans
        Alabama State Bar No. 6823-A35C
        Texas State Bar No. 24056989
        cevans@mccathernlaw.com

        Regency Plaza
        3710 Rawlins Street, Suite 1600
        Dallas, TX 75219
        (214) 741-2662 Telephone
        (214) 741-4717 Facsimile

        **ATTORNEYS FOR ACADIA INSURANCE CO., AS SUBROGEE OF YEDLA MANAGEMENT CO., INC.**

### CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2013, a true and correct copy of the foregoing was served upon the following counsel electronically via the court's ECF system:

Jack Hood
Assistant United States Attorney

**PLAINTIFF'S FIRST AMENDED COMPLAINT**                                    **PAGE 8**
L:\00760\0064 (Yedla)\Pleadings\Drafts\Plaintiff's First Amended Complaint.docx

App'x Page 77

Attorney for Defendant United States
US Attorney's Office
State Bar No. D41J
1801 Fourth Avenue North
Birmingham, AL 35203
205-244-2103
205-244-2181 – Fax
Jack.hoood@usdoj.gov

**ATTORNEYS FOR DEFENDANT UNITED STATES OF AMERICA**


_/s/ Carl L. Evans_____
Carl L. Evans

App x Page 78

FILED
2016 Jan-25  PM 03:10
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| ACADIA INSURANCE CO., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-13-S-895-NE |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND FINAL JUDGMENT

This action is based upon the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b),

2671-2680 ("FTCA").   The plaintiff's claim arose out of a fire that occurred on

September 22, 2010, at the "Country Inn and Suites" in Huntsville, Alabama:  a hotel

owned and operated by Yedla Management Company, Inc., and Hospitality

Enterprises of Huntsville, Inc.  The plaintiff, Acadia Insurance Company, is the

subrogee of those entities.  It contends that the fire was caused by an agent of the

Federal Bureau of Investigation who, while lodged as a guest at the hotel, negligently

discarded smoking materials on the balcony outside his second-floor hotel suite.

This court conducted a bench trial on January 11, 2016.  The United States

filed "Motions For Judgment At The Close Of Plaintiff's Evidence And At The Close

Of All Of The Evidence."[1]  *See* Fed. R. Civ. P. 52(c).  The court denied the motion

---

[1] Doc. no. 89.

at the close of plaintiff's evidence.[2] This opinion addresses the renewed motion at the close of all of the evidence,[3] and is based upon consideration of the pleadings, evidence, and briefs of counsel.

## I. STANDARD OF REVIEW

Federal Rule of Civil Procedure 52(c) provides that:

> If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue. The court may, however, decline to render any judgment until the close of the evidence. A judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a).[4]

Fed. R. Civ. P. 52(c).

> "A Rule 52(c) motion may be granted if . . . based on the evidence before it, the court finds, after resolving the credibility issues and weighing the evidence, for the defendant." *Denson v. United States*, 574 F.3d 1318, 1334 n. 48 (11th Cir. 2009). "In addressing a Rule 52(c) motion, the court does not view the evidence in the light most favorable to the nonmoving party, as it would in passing on a Rule 56 motion for

---

[2] Trial Transcript, at 149.

[3] *See id.* at 234-35 (stating that the court would take the renewed motion for judgment at the close of all of the evidence under advisement).

[4] Rule 52(a) states, in pertinent part, that:

> In an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately. The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court. Judgment must be entered under Rule 58.

Fed. R. Civ. P. 52(a)(1).

summary judgment or a Rule 50(a) motion for judgment as a matter of law; instead, it exercises its role as factfinder." *United States v. $242,484.00*, 389 F.3d 1149, 1172 (11th Cir. 2004). Under Rule 52(c), "the court must weigh the evidence and may consider the witnesses' credibility." *Caro–Galvan v. Curtis Richardson, Inc.*, 993 F.2d 1500, 1504 (11th Cir. 1993).

*IberiaBank v. Coconut 41, LLC*, 984 F. Supp. 2d 1283, 1295 (M.D. Fla. 2013), *aff'd*, 589 F. App'x 479 (11th Cir. 2014).

## II. FACTS

Michael Siegling is a resident of California and a Special Agent for the Federal Bureau of Investigation ("FBI"). He attended a six-week training course on hazardous devices conducted at Redstone Arsenal near Huntsville, Alabama, from August 10 through September 24, 2010.[5] The FBI did not *require* Siegling to attend the training course, but the instruction furthered Siegling's employment with the FBI by providing him with specialized skills.[6] The FBI paid for the course, paid Siegling's salary during his weeks of training, and reimbursed the costs of his travel, lodging, and food.[7]

Siegling occupied Suite 2207 on the second floor of one wing to the Country Inn and Suites from the date of his arrival in Huntsville through the date of the fire

---

[5] Trial Transcript, at 137; doc. no. 79 (Amended Statement of Agreed and Disputed Facts), at 35, Fact No. 72. The United States disputed part of Fact No. 72, but not the portion relied upon here.

[6] Trial Transcript, at 138-39; doc. no. 79 (Amended Statement of Agreed and Disputed Facts), at 4, Fact Nos. 21-22.

[7] Trial Transcript, at 138.

App'x Page 81

that rendered that wing of the hotel uninhabitable.[8]   Siegling and the other students in the training course were not required to stay at the Country Inn and Suites, but chose to do so for convenience, because a bus transported the students between the hotel and their training classes on Redstone Arsenal each day.[9]

Siegling sometimes smoked cigarettes on the balcony outside Suite 2207 in the evenings, after the end of classes, either alone or joined by other students in the training course. He did not recall whether anyone else was present on the balcony or smoked cigarettes with him on September 22, the night of the fire.[10]   He also did not state, nor was he specifically asked during trial, whether he smoked a cigarette on the balcony on the night of the fire. Siegling maintained a practice of extinguishing his cigarettes in a Styrofoam cup half-filled with water when he smoked on the balcony.[11]

Siegling testified that he considered himself to be "off-duty" in the evening hours, after each day of training classes was completed, with the exception that he sometimes studied for examinations on course materials in his hotel room during the evening hours.[12]   Siegling possessed a government-issued credit card to pay for his

---

[8] *Id.* at 137; doc. no. 79 (Amended Statement of Agreed and Disputed Facts), at 4, Fact No. 24.

[9] Trial Transcript, at 148.

[10] *Id.* at 139-40, 143.

[11] *Id.* at 144.

[12] *Id.* at 147.

4

lodging, but he was not authorized to use that card to purchase cigarettes.[13]

### III. DISCUSSION

The government's Rule 52 motion is primarily based upon two arguments. First, the government asserts that the United States should not be held liable for any damages caused by Agent Siegling because he was not acting within the line and scope of his employment when he discarded cigarettes on the balcony of his hotel suite in the evenings after class. Second, the government argues that, even if it could be held liable for Siegling's negligent acts, those acts did not cause the fire.[14]

The causation evidence presented at trial was a classic "battle of the experts." The Huntsville Fire Department officer and plaintiff's expert witness who investigated the scene both opined that the fire was caused by smoking materials negligently discarded on the balcony of Suite 2207.[15]  Defendant's expert witness, in contrast, presented evidence that the methodology employed by plaintiff's witnesses was unreliable, and the investigation conducted by each witness was incomplete.[16]

---

[13] *Id.*

[14] The United States divided this argument into three parts: *i.e.*, (1) plaintiff's expert evidence about the cause and origin of the fire is speculative and unreliable under Federal Rule of Evidence 702; (2) plaintiff failed to establish negligence under Alabama law; and (3) plaintiff's spoliation of evidence unfairly prejudiced the government. *See* doc. no. 89 (Defendant's Motions For Judgment At The Close Of Plaintiff's Evidence And At The Close Of All Of The Evidence), at 8-19.  The essence of each argument is that there is not sufficient evidence of causation.

[15] *See* Trial Transcript, at 14-87 (Testimony of Daniel Wilkerson), 88-136 (Testimony of Roderick Williams).

[16] *See id.* at 149-234 (Testimony of David Icove).

According to defendant's expert, neither the Fire Department investigator nor plaintiff's expert witness possessed sufficient information to determine the cause of the fire, so they both should have characterized the cause as "undetermined."[17]  Even so, defendant's expert personally believed that the fire originated on the third-floor balcony *above* Suite 2207 and "dropped down" to the balcony outside Siegling's second-floor suite.[18]

Despite alarming deficiencies in the investigations conducted by both the Huntsville Fire Department Investigator and plaintiff's expert witness, this court is inclined to conclude that plaintiff established by a preponderance of the evidence that the fire, more likely than not, was caused by the negligent manner in which Agent Siegling discarded his cigarette butts.

It is not necessary to actually reach that conclusion, however.  Even if Agent Siegling *was* smoking on his balcony on the evening of September 22, 2010, and even if his negligent use of smoking materials *did* cause the fire, there is no basis in Alabama law for holding the United States liable for Agent Siegling's negligence.

The Federal Tort Claims Act waives the sovereign immunity of the United States for certain torts committed by federal employees who act within the line and scope of their employment.  *E.g.*, *Federal Deposit Insurance Corp. v. Meyer*, 510

---

[17] *Id.* at 195.

[18] *Id.* at 185, 188, 195.

U.S. 471, 475 (1994) (citing 28 U.S.C. § 1346(b)).  "The question of whether an

employee's conduct was within the scope of his employment 'is governed by the law

of the state where the incident occurred.'"  *Flohr v. Mackovjak*, 84 F.3d 386, 390

(11th Cir. 1996) (quoting *S.J. & W. Ranch, Inc. v. Lehtinen*, 913 F.2d 1538, 1541

(11th Cir. 1990)) (alteration supplied).  Here, the fire occurred in Alabama and, thus,

the law of that State applies.

> The Alabama Supreme Court has repeatedly held that:
>
> The rule which has been approved for determining whether certain
> conduct of an employee is within the line and scope of his employment
> is substantially that if an employee is engaged to perform a certain
> service, whatever he does to that end, or in furtherance of the
> employment, is deemed by law to be an act done within the scope of the
> employment.

*Nelson v. Johnson*, 88 So. 2d 358, 361 (Ala. 1956) (citing *Railway Express Agency*

*v. Burns*, 225 Ala. 557, 52 So. 2d 177 (1950), and *Rochester-Hall Drug Co. v.*

*Bowden*, 218 Ala. 242, 118 So. 674 (1928)); *see also, e.g., Doe v. Swift*, 570 So. 2d

1209, 1211 (Ala. 1990) (same); *Solmica of Gulf Coast, Inc. v. Braggs*, 232 So. 2d

638, 642 (Ala. 1970) (same).  "Such conduct, to come within the rule, must not be

impelled by motives that are wholly personal, or to gratify his own feelings or

resentment, but should be in promotion of the business of his employment."

*Rochester-Hall Drug Co. v. Bowden*, 118 So. 674 (Ala. 1928); *see also Solmica*, 232

So. 2d at 642 (same).

App'x Page 85

Moreover, the fact that "an alleged wrong is committed by the employee during his regular working hours is not dispositive of the question [of] whether the employee was acting within the scope of his employment. . . . *Instead, the dispositive question is whether the employee was engaged in an act that he was hired to perform or in conduct that conferred a benefit on his employer*." *Hulbert v. State Farm Mutual Automobile Insurance Co.*, 723 So. 2d 22, 24 (Ala. 1998) (alteration and emphasis supplied, internal citations omitted).

As this court observed in the memorandum opinion and order denying defendant's motion for summary judgment, "[n]either Alabama courts nor federal courts applying Alabama law have directly addressed whether smoking cigarettes falls within an employee's scope of employment."[19]  Rather, the relevant caselaw seemed to be best summarized by the opinion in *Land v. Shaffer Trucking, Inc.*, 275 So. 2d 671 (Ala. 1973), stating that:

> In cases where the deviation [from the employer's business] is slight and not unusual, the court may, and often will, as a matter of law, determine that the servant was still executing his master's business. So, too, where the deviation is very marked and unusual, the court in like manner may determine that the servant was not on the master's business at all, but on his own.  Cases falling between these extremes will be regarded as involving merely a question of fact, to be left to the jury or other trier of such questions.

*Id*. at 674-75 (quoting *Engel v. Davis*, 256 Ala. 661, 57 So. 2d 76 (1952)) (alteration

---

[19] Doc. no. 70 (Memorandum Opinion and Order on Motion for Summary Judgment), at 5 (alteration supplied).

App'x Page 86

supplied, citations omitted). Thus, absent any case law specifically on point, this court found that the present case — the facts of which fall between the "extremes" sketched in *Land* — presented genuine issues of material fact that prevented the entry of summary judgment.

After weighing all the evidence presented at trial and reviewing the additional briefs submitted by the parties, the court concludes that Michael Siegling's act of smoking cigarettes on the balcony outside his second-floor hotel suite during the evening hours, after the conclusion of his daily training classes, was not within the line and scope of his employment as an FBI agent, even though the costs of the training course and his hotel accommodations were paid for by the FBI, and even though the training course gave Siegling skills that furthered his employment with the FBI. Moreover, despite the lack of any Alabama cases directly on point, courts in other jurisdictions have held, under similar circumstances, that smoking-related negligent acts were not performed within the line and scope of an employee's employment.

For example, the District of Minnesota confronted somewhat similar facts in *Mosby v. McGee*, No. CIV 07-3905 JRT/RLE, 2009 WL 2171104 (D. Minn. July 20, 2009). In that case, the pastor of a Connecticut church lodged in the private home of a friend while attending a religious conference held in Minnesota. The costs of that

conference were paid for by his church.  *Id.* at *1.  Like Agent Siegling, the pastor regularly smoked on the deck of the home in the evenings, at the end of each conference day.  While doing so one evening, the pastor accidentally kindled a fire by discarding the ashes of his pipe in a planter on the deck.  *Id.*  The homeowners sued the pastor and his church for negligence, seeking to recover damages they incurred as a result of the fire.  *Id.*  The district court, applying Minnesota law, held that *the church* could not be held vicariously liable for its pastor's negligence, because he "was smoking after the conference events were over for the day, at a time when he was not doing anything traceable to his work responsibilities, in a place that had no formal connection to his employment for [the church]."  *Id.* at *4 (alteration supplied).  The court expressed concern that a contrary finding would "hold employers responsible for any and all actions taken by traveling employees," and would constitute an "expansive view of vicarious liability" for which there was "no basis in the law."  *Id.*

In *Minamayor Corp. v. Paper Mill Suppliers, Inc.*, 297 F. Supp. 524 (E.D. Pa. 1969), a salesman employed by the defendant, a Michigan company, lodged in the room of a hotel owned by the plaintiff company while he was in Pennsylvania "for the purpose of soliciting orders and contacting customers or prospective customers for defendant."  *Id.* at 525.  The salesman's travel expenses were paid by his

employer. The salesman "had no fixed working hours but was subject to call at any time" while traveling on his employer's business. *Id.* A fire in the salesman's hotel room caused substantial property damage and killed the salesman, whose body was discovered in the bathroom of the hotel room. *Id.* There was little evidence regarding the cause of the fire, but the court seemed to presume that the fire was related to cigarettes. Operating under that assumption, and applying Pennsylvania law, the district court held that the employer could not be held vicariously liable because the salesman's "conduct in rising, shaving and apparently lighting a cigarette were neither acts within the scope of his employment or negligent conduct during the course thereof." *Id.* at 526. Like the District of Minnesota in *Mosby*, the Eastern District of Pennsylvania in *Minamayor* expressed concern over expanding the doctrine of vicarious liability so broadly that "employers are responsible for all acts of their salesmen while on the road without regard to whether such acts are related in any way to the employer's business." *Id.*

In *Merritt v. United States*, 332 F.2d 397 (1st Cir. 1964), the plaintiff leased a dwelling "to the government for use as off-post family housing for military personnel and their dependents." *Id.* at 398. "A sergeant, quartered therein, after finishing his duties for the day, negligently set fire to the house by smoking in bed." *Id.* The First Circuit applied Massachusetts law, and found "nothing in the Massachusetts cases

suggesting that an employee smoking in bed during his off hours is in the course of his employment," despite the fact that the federal government had paid the rent for the dwelling. *Id.* at 398-99. The court rejected the plaintiff's argument that "the fact that the government supplied [the sergeant] with a residence meant that anything he was doing in the residence was in the scope of his employment." *Id.* at 399 (alteration supplied). Other cases cited by the government's attorneys in their pre-trial brief that this court finds persuasive include *Meredith v. Ringling Brothers Barnum & Bailey Combined Shows*, 321 F.2d 107 (6th Cir. 1963) (holding that the circus employer could not be held vicariously liable for an employee who negligently kindled a fire by smoking in the plaintiff's barn, which he presumably had entered for the purpose of urinating); *HPT IHG Properties Trust v. Shaw Group, Inc.*, 744 S.E.2d 496 (N.C. Ct. App. 2013) (finding that an employer could not be held vicariously liable for damages caused by a fire that was started when an employee left a pan of grease unattended on a stove in his hotel room); *Dobson v. Don January Roofing Co.*, 392 S.W.2d 153 (Tex. Civ. App.), *writ refused*, 392 S.W.2d 790 (Tex. 1965) (finding that an employer could not be held vicariously liable for damages caused by an employee who, while replacing shingles on the roof of plaintiff's home, permitted hot cigarette ashes to fall upon the roof and kindle a fire); *Herr v. Simplex Paper Box Corp.*, 330 Pa. 129, 133-34, 198 A. 309, 311 (1938); *Kelly v. Louisiana Oil Refining Co.*, 167

Tenn. 101, 66 S.W.2d 997, 998 (1934).  *See also* Restatement (Second) of Agency § 235 (1958).

This court finds the rationale of the foregoing opinions to be persuasive.  As in those cases, *even if* this court were to find, as plaintiff contends, that Agent Siegling negligently discarded smoking materials on the balcony outside his second floor hotel suite, *and*, that such negligence was the proximate cause of the loss sustained by plaintiff's insureds, Agent Siegling's negligence, nevertheless, occurred *after* the conclusion of his training classes for the day, and there is no indication that he was performing any services for the government while smoking.  There simply is no connection between Agent Siegling's smoking activities and his employment, apart from the fact that he smoked on the balcony of a hotel suite paid for by his employer.  Under the reasoning of the persuasive authorities previously discussed, that is not enough to impose vicarious liability.  Moreover, this court shares the concern expressed in some of the persuasive opinions cited above:  *that is*, allowing plaintiff to recover from the United States under the circumstances of this case would unreasonably broaden the doctrine of vicarious liability.   Expanding the doctrine in such a manner would essentially result in an employer being held responsible for *anything* its employee does while on travel, a result that cannot be the intent of Alabama law.

App'x Page 91

The cases relied upon by plaintiff, while handed-down by Alabama courts, are distinguishable from the present case and have not persuaded this court to reach a different conclusion.  In *Singleton v. Burchfield*, 362 F. Supp. 2d 1291 (M.D. Ala. 2005), the defendant, an employee of the United States Air Force, traveled from his home in North Carolina to Alabama in a government-owned vehicle for a five-week training course.  *Id.* at 1293.  After training one evening, he drove the government-owned vehicle from his on-base lodging to an off-base restaurant to have dinner with fellow classmates.  *Id.* at 1294.  While *en route* to the restaurant, the defendant's vehicle collided with the plaintiff's, causing injuries to both parties.  *Id.*  The district court, applying Alabama law, held that the United States could be held vicariously liable for any damages awarded against the defendant, because he was acting within the line and scope of his employment at the time of the accident.  *Id.* at 1295-96.  The primary factor affecting that decision was the defendant's use of a government-owned vehicle, because, "[u]nder Alabama law, the '[u]se of a vehicle owned by an employer creates an "administrative presumption" that the employee was acting within the scope of his employment.'"  *Id.* at 1295 (quoting *Pryor v. Brown & Root USA, Inc.*, 674 So. 2d 45, 48 (Ala. 1995)) (first alteration supplied, second alteration in original).  The defendant was allowed to use that vehicle only for limited purposes, one of which was traveling to "reputable eating establishments in reasonable proximity to the

installation." *Singleton*, 362 F. Supp. 2d at 1293-94.  Because the defendant was

"[o]perating his government vehicle within the constraints set out by his employer,"

his actions were "in furtherance of his military duty [and] were of benefit to his

employer." *Id.* at 1295 (alterations supplied).

Similarly, in *Flohr v. Mackovjak*, 84 F.3d 386 (11th Cir. 1996), the defendant,

a civilian employee of the United States Army and an Alabama resident, traveled to

California for a week-long training course.  *Id.* at 388.  The Army paid for his travel

expenses, including meals and a rental car, which the defendant was allowed to use

without any restrictions.  *Id.*  The defendant used the rental car to drive himself and

a passenger to a local restaurant for dinner at the conclusion of the training course one

evening.  During the return drive to the hotel, the defendant caused an automobile

accident, which resulted in injuries to his passenger, who brought suit.  *Id.*  The

Eleventh Circuit, applying California law,[20] held that the Army could be held

vicariously liable for the defendant's negligence in causing the accident.  *Id.* at 392.

The Court reasoned:

> The men were in California at the instruction of the United States Army
> to attend a conference related to their work.  The Army paid for all of
> their expenses while they were away, including their meals and the cost
> of renting an automobile.  The men appear to have received no
> instructions to drive or not to drive to any particular location for their

---

[20] Even though the *Flohr* court applied California law, and not Alabama law, the district court noted in *Singleton* that "the [*Flohr*] court's analysis of the policies behind the decision are equally applicable in this case." *Singleton*, 362 F. Supp. 2d at 1295 (alteration supplied).

App'x Page 93

meals. *It is reasonable to assume that the Army expected the men to use the automobile it provided to drive not only to and from the conference but also to a place where they could purchase meals, which were also paid for by the Army*. The men's conduct was not "so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business." [*Mary M. v. City of Los Angeles*, 814 P.2d 1341, 1344 (Cal. 1991)]. Rather, the activity "may fairly be regarded as typical of or broadly incidental" to the enterprise undertaken by the Army. *Id.* The enterprise in this case was the sending of Army personnel to California for several days to attend meetings related to the Army's business.

*Flohr*, 84 F.3d at 391-92 (emphasis and alterations supplied).

Driving a government-provided car to purchase dinner while on work-related travel does not carry the same significance as smoking or discarding cigarettes during a time of day that has absolutely no connection with the employee's duties. There is no "administrative presumption" of employment-relatedness associated with cigarette smoking, as there is with driving a vehicle owned or rented by the government. Moreover, it is much more reasonable for an employer to expect its employee who is on work-related travel to drive to a restaurant to purchase a meal than it is to expect the same employee to smoke cigarettes. Meals are a necessity; cigarettes are not. Finally, and importantly, the United States did not pay for Agent Siegling's cigarettes. In contrast, the government employers paid for the cars and meals in the *Singleton* and *Flohr* cases. Agent Siegling was in fact prohibited from using his government-issued credit card to purchase items like cigarettes.

App'x Page 94

For all of the foregoing reasons, this court concludes that the Alabama Supreme Court would follow the reasoning of cases from those jurisdictions discussed above, and hold that Agent Siegling was not acting within the line and scope of his employment with the FBI when he smoked and discarded a cigarette on the balcony of his hotel room in the evening after his training course was completed for the day. As such, the United States cannot be held vicariously liable for Agent Siegling's negligence, and plaintiff's Federal Tort Claims Act must be dismissed.

## IV. CONCLUSION AND ORDER

In accordance with the foregoing, the government's Rule 52 motion is GRANTED. Judgment is entered in favor of defendant, the United States of America, on all claims asserted by plaintiff. Costs are taxed to plaintiff, and the Clerk is directed to close this file.

**DONE** and **ORDERED** this 25th day of January, 2016.

_____
United States District Judge

App'x Page 95

```
1   recess of an hour for lunch here.
2                         (Lunch recess.)
3                   THE COURT:  Who is the next witness?
4                   MR. GRINKE:  Michael Siegling, Your Honor.
5                       MICHAEL SIEGLING
6   having been first duly sworn by the Courtroom Deputy Clerk,
7   was examined and testified as follows:
8                   THE CLERK:  State your name for the
9   record.
10                  THE WITNESS:  Michael Siegling.
11                  THE CLERK:  In which city and state do you
12  reside?
13                  THE WITNESS:  Oakland, California.
14                  THE CLERK:  Thank you.
15                  MR. GRINKE:  May I proceed, Your Honor?
16                  THE COURT:  Yes.
17                    DIRECT EXAMINATION
18  BY MR. GRINKE:
19  Q       Good afternoon, Mr. Siegling.
20  A       Good afternoon.
21  Q       How are you currently employed?
22  A       With the FBI.
23  Q       And do you have a job title with the FBI, or
24  department, or how would you tell somebody what you do?
25  A       I'm a special agent.
```

```
 1   Q         Were you a special agent with the FBI back on
 2   September 22nd of 2010?
 3   A         I was.
 4   Q         And you were -- at that time period you were staying
 5   at the Country Inn and Suites here in Huntsville.  Do you
 6   recall that?
 7   A         Correct.
 8   Q         And you were here for about a six-week period of
 9   time to take a training course; is that right?
10   A         That's correct.
11   Q         What training course was it?
12   A         The Hazardous Devices School basic course.
13   Q         And I understand that that was not something that
14   the FBI required you to do, but it was something that you
15   were allowed to do in furtherance of your employment with the
16   FBI?
17   A         Correct.
18   Q         And while you were here for that training course you
19   stayed at the Country Inn and Suites?
20   A         I did.
21   Q         And the U.S. Government paid for the hotel room that
22   you were staying in?
23   A         They did.  They reimbursed my lodging.
24   Q         And did they reimburse your food while you were
25   here?
```

1    A         And that, as well.

2    Q         What about transportation?  Did you have a rental

3    car or --

4    A         I did not have a rental car.

5    Q         How did you get around?

6    A         Typically, I would be relying upon classmates if I

7    needed to go to a store, or restaurant, or something to that

8    effect.

9    Q         And Plaintiff's Exhibit 8, sir, if you wouldn't

10   mind, there is a -- should be a black notebook.  It might be

11   up there on the ledge.

12   A         Yeah.

13   Q         If you could look at Tab Number 8?

14   A         8.

15   Q         And you can -- in fact, you can move that one down,

16   move one out of the way, whatever is helpful to you.

17             And if I could ask you to take a look at that, I

18   will represent these were documents that were produced by the

19   Government in this lawsuit.  Do these appear to be a true and

20   correct copy of the travel documents that you submitted for

21   reimbursement with respect to your trip to Huntsville?

22   A         They do.

23   Q         Thank you, sir.  There was no other reason for you

24   to be in Huntsville on September 22nd, 2010, other than to be

25   present for the training course you were involved in?

1    A        Correct.

2    Q        And do you remember giving a deposition in this

3    case?

4    A        I do.

5    Q        In your deposition, and if we need to pull it out, I

6    don't want to trick you, we will get you a copy and we will

7    look at it.  But just in general, I believe you testified

8    that throughout your stay at the Country Inn and Suites

9    during that six-week period there were times when you would

10   have fellow agents or other folks that were staying at the

11   hotel come on the balcony with you, do you recall that?

12   A        True.

13   Q        And that sometimes they might have a beer or smoke a

14   cigarette out on the balcony with you, as well?

15   A        That's correct.

16   Q        The night of the fire, September 22nd, there wasn't

17   anybody else out there on the balcony with you?

18   A        I do not recall.

19   Q        Okay.  And you recall speaking with Dan Wilkerson of

20   the Huntsville Fire Department that evening?

21   A        I do.

22   Q        And you recall giving him a written statement?

23   A        Yes.

24   Q        And you did not write in your written statement that

25   someone else had been out there on the balcony with you?

1    A        I don't believe I did.

2    Q        I don't want to trick you.

3                    THE COURT:  It will speak for itself.

4    Move on.

5    BY MR. GRINKE:

6    Q        It will.  Okay.  And, likewise, the defendant has

7    answered some discovery in this case Plaintiff's Exhibit 9,

8    if you could turn to that.  I'm sorry.  Make it 12.  9 was

9    the fire department statement, but we have already covered

10   that.

11                   Plaintiff's Exhibit 12.  And if you will go to Page

12   8 of that document.  These are the Government's responses to

13   our discovery request where we ask for certain information.

14                   Question Number 6 or Interrogatory Number 6 asks to

15   identify each person or entity other than you or the

16   plaintiff who you contend caused or contributed to the cause

17   of the fire, and the answer doesn't really answer anything.

18   It just says discovery is ongoing.

19                   But you have never provided the Government or the

20   lawyers for the Government with a name or the identification

21   of anybody else who might have been on the balcony with you

22   on September 22nd; is that fair?

23   A        Okay.  Say that again.

24   Q        That was a long one.  I said a lot there.  I said a

25   mouthful.

1          Okay.  So have you ever provided the U.S. Government

2     or your employer or the lawyers with the identity or the name

3     of another individual who was out on the balcony with you the

4     night of September 22nd?

5                    MR. HOOD:  Lacks foundation, Your Honor.

6     I don't think that's a proper foundation for that question.

7     I don't -- it's ambiguous.

8                    THE COURT:  Well, I overrule.

9          Have you ever told anyone that there was another

10    person on the balcony with you the night that the fire

11    occurred?

12                   THE WITNESS:  I don't recall specifically

13    if I said that there was someone the particular night when

14    the fire occurred that they were on a balcony with me.  I

15    know there were people on occasion who were on my balcony and

16    we would smoke cigarettes together.  I don't recall if, in

17    fact, someone was with me that particular night.  Nor do I

18    recall if I gave previous folks asking about this, to include

19    Fire Investigator Wilkerson, the names or identities of any

20    of these folks.

21         Does that answer your question?

22    BY MR. GRINKE:

23    Q       Fair enough.

24    A       Okay.

25    Q       I'll take it.

1           Now, with respect to some of these other folks or

2  one of these other people that may have smoked cigarettes on

3  your balcony, in your deposition you mentioned that one of

4  the people might smoke a Winston.  Do you recall that?

5  A        I do not recall that.

6  Q        You don't?  Okay.  Well, I'll give you my copy.

7                   MR. GRINKE:  And this is Mr. Siegling's

8  deposition, Page 15.  May I approach the witness, Your Honor?

9                   THE COURT:  Yes, sir.

10 BY MR. GRINKE:

11 Q        And just lines 1 through 11.

12 A        Okay.

13 Q        I will let you read it real quick, and then I will

14 ask you a question.

15 A        Okay.  Then apparently I did.  I didn't remember

16 that.

17 Q        That's okay.  Okay.  So you might have had in your

18 mind when you gave your deposition that someone else out

19 there on the balcony during that six-week period might smoke

20 some Winstons?

21 A        And the deposition was two or three years ago.  This

22 incident occurred over five years ago, so I don't recall.

23 Q        Okay.  Fair enough.  Thank you.

24          You don't recall anyone else being in your room the

25 night of September 22nd?

1  A        I do not.

2                  MR. GRINKE:  Thank you, Your Honor.  I

3  will pass the witness.  Thank you, sir.

4                    CROSS-EXAMINATION

5  BY MR. HOOD:

6  Q        Mr. Siegling, approximately how many members of your

7  training class were there altogether, if you recall?

8  A        Approximately 30.

9  Q        And out of those 30, approximately how many of those

10 would be from a non-federal agency; in other words, state and

11 local people going through the course?

12 A        In the vast majority of them.  I know for certain I

13 was the only FBI agent going through this course.  I believe

14 there was another federal agent.  So outside of the two, I

15 would say 28, then, were state and local officers.

16 Q        All right.

17                  THE COURT:  Was the other federal agent

18 from ATF?

19                  THE WITNESS:  Yes, sir, I believe so.

20 BY MR. GRINKE:

21 Q        And how did you extinguish your cigarettes when you

22 did smoke?

23 A        When I did smoke on occasion on the balcony I would

24 extinguish my cigarettes with the white styrofoam cup that

25 was provided inside my room that I would take out there

approximately half filled with water.  I would do that

consistently every time I smoked.

Q        And how often did you smoke on your balcony?

A        No particular pattern, maybe every day, every fourth

day.

Q        Describe for us what you remember about the alarm

and the fire.

A        These training days were very, very early days, so I

would go to bed early, probably 8:00 or 9:00 on most typical

week days.  What I remember about the night of the fire was

being awoken from a deep sleep with a very loud fire alarm.

Q        What happened next?

A        I got up, I looked around the inside of my room.

And it was -- adjacent to the bedroom was the kind of living

area with the kitchenette.  I looked out the window to my

balcony.  I saw no flames, no evidence of fire, nor did I

smell any kind of smoke.

        And so it -- the thought process was, well, it could

be, you know, false alarm, somebody could have pulled the

alarm, not sure, but I still might have to get out of the

room.  And the thought was, I probably will go out on the

balcony or go out into the hallway -- correction -- and see

if I need to leave my room.

Q        What happened next?

A        Then probably within about five or ten minutes --

1    and this is a guesstimation on the time -- a loud knock on

2    the door.  It was one of my classmates.  We were all staying

3    on the second wing there.

4            He said, hey, there's been a fire and we need to

5    evacuate the building.  Okay.  I went back in, was there

6    anything I needed to take with me?  I think I only just put

7    on sweats.  I had a t-shirt and underwear on.  And then I

8    also went back out this time onto the balcony itself.

9    Q        You opened the door?

10   A        I opened the door.  I saw no fire on the base of the

11   floor of this balcony.  I saw a beer can.  I looked to my

12   left and approximately 6 feet away slightly above eye level

13   they were in deep flames confirming there had been a fire, I

14   needed to evacuate.

15   Q        So what did you do?

16   A        At that point, I went out.  There was two classmates

17   who were standing directly across from me in the hallway and

18   one I believe adjacent to them.  I knocked on their doors,

19   ensure their safety, making sure they were getting out.  And

20   people were sure enough getting out.

21           At that point, I went down one set of stairs.  And

22   the opposite side of where the fire was on this building was

23   a -- the driveway opposite the Waffle House where everyone

24   who had been evacuated in this building were congregating and

25   assembling.

1          A very short time thereafter, the fire department

2     came, put out the fire.  And then we were told to all

3     assemble inside a large conference room where the hotel staff

4     would address us regarding the fire.

5     Q          On a typical class day, what time would you go to

6     class and what time would you return?

7     A          Like I said, there were early morning days, so I

8     think 4:45 approximately.  There was a bus that would pick us

9     up from the hotel, about a 30-minute shuttle to Redstone

10    Arsenal where the HDS schoolhouse is located.

11          Every day was different according to the training

12    schedule.  And we would return approximately 4:00 to 5:00 in

13    the evening.

14    Q          When you returned to the Country Inn and Suites, to

15    what extent were you under the control and supervision of

16    your home office when you were there at the hotel?

17    A          When I was at the home -- I mean, I never fell under

18    the supervision of my home office, which would be San

19    Francisco division of the FBI.

20          There is, you know, their chain of command rests now

21    -- since it's a TDY when assigned as a student would be the

22    HDS faculty.  But it typically, at the end of the day, I

23    considered myself off duty with the expectation I was

24    studying for the numerous exams that were held throughout the

25    course.

1    Q        And how many exams would that be?

2    A        Probably every two or three days there was some kind

3    of quiz or hands-on practical application of what you learned

4    that you had to demonstrate competency of.

5    Q        To what extent, if any, were you allowed to use your

6    Government credit card to purchase cigarettes?

7    A        Huh-uh.  You're not allowed to do that.

8    Q        To what extent, if any, did you smoke inside your

9    room?

10   A        I never -- there was a -- there was an ashtray

11   inside the room, but I never smoked inside the room.  Only on

12   the balcony.

13   Q        To what extent did you frequent the -- your balcony

14   without smoking?

15   A        Pretty much every day.  I would either, you know,

16   like I said about the smoking, every one to four days, but as

17   far as everything I would go out there to get fresh air.  So

18   pretty consistently every day.

19                  MR. HOOD:  I think that's all I have.

20   Just a moment, Judge.

21   Q        The Country Inn and Suites -- and this is just for

22   the record -- was in no sense of the word federal property or

23   leased by the federal government or any of those kind of

24   relationships, was it?

25   A        No.  It was my understanding there was a contract

1    that they would use this hotel to make it convenient for the

2    buses to get the students to where they needed to be.

3                      MR. HOOD:  I have no further questions,

4    Judge.

5                      MR. GRINKE:  Nothing further, Your Honor.

6                      THE COURT:  Thank you.

7                      MR. HOOD:  May this witness be excused?

8                      THE COURT:  Yes, sir.

9                      MR. HOOD:  Thank you.

10                     MR. GRINKE:  Your Honor, the plaintiff

11   rests.

12                     MR. CHEEK:  Your Honor, at this time, we

13   would make a motion under Rule 52(c).  I have a paper copy

14   that I will submit to your deputy, if that's acceptable.

15       And very briefly, just to give Your Honor a brief

16   overview, we would argue that Agent Siegling was not within

17   the scope of employment, and that plaintiffs have not proven

18   their case by a preponderance of the evidence.  But we'll

19   incorporate our arguments --

20                     THE COURT:  All right.

21                     MR. CHEEK:  -- contained in the brief.

22                     THE COURT:  I will overrule that at this

23   juncture.  Let me hear your witnesses.

24                     MR. HOOD:  At this time, we would call

25   Dr. David Icove.